IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

CARLOS JOAQUIN TORRES, JR.,
*Appellant.*

No. 2 CA-CR 2012-0505
Filed December 10, 2013

---

Appeal from the Superior Court in Pima County
No. CR20113766001
The Honorable Richard S. Fields, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Thomas C. Horne, Arizona Attorney General
By Joseph T. Maziarz, Section Chief Counsel, Phoenix
and Alan L. Amann, Assistant Attorney General, Tucson
*Counsel for Appellee*

Lori J. Lefferts, Pima County Public Defender
By Lisa M. Hise, Assistant Public Defender, Tucson
*Counsel for Appellant*

---

**OPINION**

Judge Eckerstrom authored the opinion of the Court, in which
Presiding Judge Kelly and Judge Espinosa concurred.

---

ECKERSTROM, Judge:

¶1 Appellant Carlos Torres appeals from his conviction and sentence for second-degree murder. Although we affirm Torres's conviction and sentence, we vacate the criminal restitution order the trial court entered at sentencing.

**Factual and Procedural Background**

¶2 On August 9, 2011, sometime between 8:00 and 9:00 a.m., Tucson police officers responded to a report of a suicidal person at an apartment complex. The one-bedroom apartment in question was occupied by Torres, his former girlfriend Victoria, and their eighteen-month-old daughter Mary.[1] When the police arrived, Torres and Mary came outside and the officers entered the apartment. They found in the bedroom the body of Victoria in rigor mortis and recognized that she was dead. When homicide detectives first interviewed Torres regarding the death, he insisted that Victoria had killed herself. However, he eventually admitted to his mother in a taped jail telephone call that he had committed the murder. According to Torres's description of events, as testified to at trial by his mother, the crime proceeded as follows:

¶3 Torres and Victoria were at the apartment playing video games. Mary was playing in the same room. An argument erupted between Torres and Victoria, and she ran into the bedroom, followed by Torres. In the bedroom, the argument grew more heated and became physical. Victoria told Torres she wished he were dead and wished she had had the baby with somebody else. Torres went into a rage, became "dizzy," and, when he regained awareness, Victoria was dead.

¶4 Although Torres's statement was the only basis for the above details, independent evidence established other facts. According to the physician who conducted the autopsy, Victoria had

---

[1]For ease of reference and to protect the anonymity of the victim, I.A., and the daughter, B., we use pseudonyms for each of them. *See* Ariz. R. Sup. Ct. 111(i).

been stabbed at least twenty-five times. A paramedic testified that Torres received medical treatment for a cut finger in the lobby of his apartment complex at approximately 1:00 a.m. and was taken to the hospital at his own insistence. Mary was with him in the lobby and at the hospital. Torres later admitted that Victoria was dead by the time he went to the hospital. A time-stamped still photograph from a hospital security camera showed Torres and Mary leaving the hospital at 4:20 a.m. A detective testified that the murder weapon was found hidden in a hallway closet underneath several stacked items. The detective also testified that bleach had been poured over the carpet surrounding Victoria's body.

¶5 After a jury trial, Torres was convicted of second-degree murder. Torres waived his right to a jury trial on aggravating factors. The trial court found two such factors: the presence of a minor child and emotional impact on the victim's family. The court sentenced Torres to an aggravated prison term of nineteen years. This timely appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 13-4033(A)(1).

**Verdict Form**

¶6 Torres claims the trial court erred in using a verdict form that incorrectly treated manslaughter upon sudden quarrel or heat of passion as a lesser-included offense of second-degree murder. "We review de novo whether jury instructions correctly state the law." *State v. Prince*, 226 Ariz. 516, ¶ 77, 250 P.3d 1145, 1165 (2011). The state asserts, however, that Torres invited any error and, therefore, he should not be allowed to assert this claim on appeal.

¶7 In order to determine if a party invited error, this court "look[s] to the source of the error, which must be the party urging the error." *State v. Logan*, 200 Ariz. 564, ¶ 11, 30 P.3d 631, 633 (2001). Mere acquiescence is insufficient to find invited error; the party must have "affirmatively and independently initiated the error." *State v. Lucero*, 223 Ariz. 129, ¶ 31, 220 P.3d 249, 258 (App. 2009). In *Lucero*, the trial court had asked the defendant whether a military official should be considered a law enforcement officer. *Id.* ¶ 32. The defendant responded that he was not sure, but he agreed with the court's proposal to allow the jury to decide the issue. *Id.* The

court noted that the defendant had neither "ask[ed] the court to instruct the jury that it was a fact question" nor "affirmatively argued for the response to try and trick the court into error." *Id.* ¶ 3. It therefore concluded that the defendant had not invited the error.

**¶8** Here, Torres likewise did not propose the verdict form. Nor did he urge the trial court to use it. As in *Lucero*, he stated he was unsure about the correct law, calling the situation a "quandary," and ultimately agreeing the verdict form was "just fine." Accordingly, although Torres acquiesced in the error, he did not invite it.

**¶9** However, Torres did not object to the verdict form. Consequently, he has forfeited the right to seek relief for all but fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607-08 (2005). Because Torres does not argue that the error here was fundamental, and because we find no error that can be so characterized, Torres has waived this claim. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d 135, 140 (App. 2008) (noting fundamental error argument waived if not asserted); *State v. Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d 641, 650 (App. 2007) ("Although we do not search the record for fundamental error, we will not ignore it when we find it.").

## Presence of Child as Aggravating Factor

**¶10** Section 13-701(D)(18), A.R.S., provides that a court shall find an aggravating circumstance for sentencing purposes when a domestic violence offense "was committed in the presence of a child." The trial court found that circumstance here. Torres challenges that finding, insisting that "[t]here was no evidence that the minor child was in the room when the murder occurred, that the child was aware of what was happening, or that the child was even awake at the time."

**¶11** We will not disturb a trial court's finding that an aggravating circumstance exists absent an abuse by the court of its discretion. *See State v. Long*, 207 Ariz. 140, ¶ 39, 83 P.3d 618, 625 (App. 2004). "An abuse of discretion occurs when the trial court's decision is . . . unsupported by the record." *State v. Peralta*, 221 Ariz.

359, ¶ 3, 212 P.3d 51, 53 (App. 2009). Because the evidence supports the finding that Torres committed the murder in Mary's presence, the court did not abuse its discretion here.

¶12 This court has determined that, in the context of § 13-701(D)(18), the term "presence" does not require the child to "be in the same room as an incident." *State v. Burgett*, 226 Ariz. 85, ¶ 7, 244 P.3d 89, 92 (App. 2010). We further observed that the purpose of this aggravating factor is "to punish more severely those who expose children to domestic violence." *Id.* ¶ 6.

¶13 Here, as Torres emphasizes, the state presented no direct evidence that Mary witnessed him stabbing Victoria to death. The evidence does not reveal whether Mary followed her parents into the room where the murder took place, if the door to the room was open or closed as Torres stabbed Victoria, or if the physical part of the struggle was sufficiently audible that Mary would have heard it had she not followed her parents into the bedroom.

¶14 Nonetheless, the state presented ample circumstantial evidence from which the trial court could infer that Mary was not merely in proximity to the offense but also was sufficiently exposed to the attendant domestic violence so that she could be characterized as "present" for that offense pursuant to § 13-701(D)(18).

¶15 Torres's own statement established that Mary was awake and in the same room as Torres and Victoria when the argument preceding the homicide began. In that statement, Torres does not suggest that he took any precautions to shield or separate Mary from the immediately subsequent events as he and Victoria moved to the bedroom. To the contrary, he maintains he was too emotionally overcome to engage in any deliberative thinking at that time. The trial court also could infer from Mary's age—an age at which children are utterly dependent on their caregiving parent—that Mary would be alert to her mother's location and behavior during the violence that immediately followed the argument. The one-bedroom apartment was small, and Mary therefore must have been in close physical proximity to her parents during the murder itself, even if she did not enter the bedroom. Finally, Mary was with Torres in the entire aftermath of the murder and was present in the

apartment where the body of her mother was found when the police arrived.

**¶16**        A child's mere presence in a home where an offense has occurred does not, standing alone, fulfill the statutory requirement absent some evidence that the child was aware of that offense.  As noted above, the purpose of this aggravating factor is to inflict a harsher punishment on those who harm children by exposing them to violence.  *See Burgett*, 226 Ariz. 85, ¶ 6, 244 P.3d at 91.  To hold that a child who was entirely unaware of the offense was "present" would be inconsistent with that purpose.  But the evidence here, albeit circumstantial, provided a sufficient basis for the trial court to infer that Mary had some sensory experience of the offense itself.  Accordingly, we conclude the court did not abuse its discretion in finding that Torres committed a domestic violence offense in the presence of a child pursuant to § 13-701(D)(18).

## Criminal Restitution Order

**¶17**        At sentencing, the trial court imposed various fees and assessments, which it then "reduced to a Criminal Restitution Order [CRO], with no interest, penalties or collection fees to accrue while the defendant is in the Department of Corrections."  Although Torres does not raise this issue on appeal, this court has determined that in these circumstances, based on A.R.S. § 13–805(C),[2] "the imposition of a CRO before the defendant's probation or sentence has expired 'constitutes an illegal sentence, which is necessarily fundamental, reversible error.'"  *State v. Lopez*, 231 Ariz. 561, ¶ 2, 298 P.3d 909, 910 (App. 2013), *quoting State v. Lewandowski*, 220 Ariz. 531, ¶ 15, 207 P.3d 784, 789 (App. 2009).

---

[2]We cite the version of the statute in effect at the time Torres committed his offense.  Section 13-805 has been amended and may now permit the imposition of a CRO at sentencing in certain circumstances.  2012 Ariz. Sess. Laws, ch. 269, § 1.

## Conclusion

¶18        For the foregoing reasons, Torres's conviction and sentence for second-degree murder are affirmed.  We vacate the CRO entered at sentencing.