IN THE
# ARIZONA COURT OF APPEALS
### DIVISION TWO

THE STATE OF ARIZONA,
*Appellee*,

*v.*

BRIAN K. HANCOCK,
*Appellant*.

No. 2 CA-CR 2015-0117
Filed July 29, 2016

Appeal from the Superior Court in Greenlee County
No. CR201400060
The Honorable Monica L. Stauffer, Judge

**CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED**

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Tanja K. Kelly, Assistant Attorney General, Tucson
*Counsel for Appellee*

Law Offices of Trent R. Buckallew, P.C., Mesa
By Trent R. Buckallew
*Counsel for Appellant*

_____

**OPINION**

_____

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Howard and Judge Staring concurred.

_____

E S P I N O S A, Judge:

¶1   After a jury trial, Brian Hancock was found guilty of sexual conduct with a minor and two counts of sexual abuse of his then fifteen-year-old step-daughter. The jury found two aggravating factors proven beyond a reasonable doubt, and he was sentenced to consecutive and concurrent, enhanced and aggravated prison terms totaling twelve years. On appeal, Hancock alleges he was denied his constitutional right to a public trial, challenges the sufficiency of the evidence, and contends his sentences were illegally enhanced. For the following reasons we affirm his convictions, but remand for resentencing.

**Factual and Procedural Background**

¶2   We view the facts in the light most favorable to sustaining the jury's verdicts. *State v. Payne*, 233 Ariz. 484, n.1, 314 P.3d 1239, 1251 n.1 (2013). In the spring of 2013, Hancock engaged in sexual conduct with his fifteen-year-old step-daughter, M.H., while she pretended to be asleep on his bed. That summer, M.H. confided to some friends that her father had molested her. Two of the friends reported it to their parents, who in turn alerted the Graham County Sheriff's Office. During a forensic interview with sheriff's detectives, M.H. described two separate instances where she was awoken by her stepfather squeezing her breasts and rubbing her vaginal area. Hancock was indicted on two charges of sexual abuse, both class five felonies in violation of A.R.S. § 13-1404(A), and one charge of sexual conduct, a class two felony in violation of A.R. S. § 13-1405(A) and (B).

¶3   Before trial, the state disclosed Hancock's immediate family members as potential witnesses. Hancock's wife and his mother were named on the state's initial disclosure in July 2014,

Hancock's wife was deposed in October 2014, and three other family members were disclosed as witnesses in January 2015, over two weeks before the commencement of trial.

¶4 Before the calling of any witnesses on the second day of trial, the court indicated it intended to invoke "the rule"[1] barring any witness from being in the courtroom during testimony. The prosecutor then asked that the victim and her guardian be sworn separately from the "defense witnesses," i.e. Hancock's family, because the victim was upset by seeing Hancock and other members of the family. Hancock did not object to the court's invocation of the rule or to the witnesses being sworn in separately. He did not testify in his own defense, and the state ultimately did not call any of the family witnesses to testify.

¶5 Hancock's trial occurred over three days, during which the jury heard evidence from M.H., the two friends who reported the abuse, and two law enforcement officers involved in the investigation. At the conclusion of the trial, Hancock was found guilty of all charges. The jury also found that two aggravating factors had been proven beyond a reasonable doubt. At sentencing, the trial court found a third aggravating factor, Hancock admitted a prior felony conviction, and the court sentenced him as described above. We have jurisdiction over Hancock's appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

---

[1]The first day of trial was occupied by jury selection. Although it is clear the trial court's reference to "the rule" was to the rule of witness exclusion, it is unclear *which* rule of exclusion the court was referring to. Rule 9.3(a), Ariz. R. Crim. P., authorizes a trial court to, and "at the request of either party shall, exclude prospective witnesses from the courtroom during opening statements and the testimony of other witnesses." Rule 615, Ariz. R. of Evid., similarly provides that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own." Finding no difference that would impact our analysis, we do not distinguish between the two rules here.

**Public Trial**

¶6  The Sixth Amendment to the United States Constitution and Article II, § 24 of the Arizona Constitution guarantee a criminal defendant the right to a public trial.[2] *Ridenour v. Schwartz*, 179 Ariz. 1, 3, 875 P.2d 1306, 1308 (1994). As the Supreme Court has observed, "the guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution." *In re Oliver*, 333 U.S. 257, 270 (1948). Nevertheless, the right to a public trial may be limited under certain circumstances. *See Waller v. Georgia*, 467 U.S. 39, 48 (1984) (establishing test for determining whether closure of criminal proceeding is constitutional); *State v. Tucker*, 231 Ariz. 125, ¶ 10, 290 P.3d 1248, 1255 (App. 2012) (applying *Waller* test to partial courtroom closure in Arizona).

¶7  Hancock argues the exclusion of his family members from the courtroom "constituted an abuse of the subpoena [power] and denied [him] a public trial." He acknowledges raising this argument for the first time on appeal, but he asserts denial of a public trial constitutes structural error, relying on *State v. Ring*, in which our supreme court noted that denial of a public criminal trial is one of the "relatively few instances in which we should regard error as structural." 204 Ariz. 534, ¶ 46, 65 P.3d 915, 933-34 (2003), *citing Waller*, 467 U.S. 39. Where error is structural, prejudice is presumed and reversal is mandated regardless of whether an objection is made below. *State v. Valverde*, 220 Ariz. 582, ¶ 10, 208 P.3d 233, 236 (2009). We review both constitutional and structural error claims de novo. *See Tucker*, 231 Ariz. 125, ¶ 7, 290 P.3d at 1254.

¶8  As a threshold matter, we must decide whether the state's use of the subpoena power, coupled with the trial court's invocation of the rule of witness exclusion in this case, constitutes structural error. Such error "deprive[s] defendants of basic protections without which a criminal trial cannot reliably serve its

---

  [2]Hancock mounts no separate argument based on the Arizona Constitution, and because Arizona's right to a public trial has been deemed coextensive with the federal constitutional right, *see State v. Tucker*, 231 Ariz. 125, n.6, 290 P.3d 1248, 1255 n.6 (App. 2012), we do not address Article II, § 24 separately.

function as a vehicle for determination of guilt or innocence." Valverde, 220 Ariz. 582, ¶ 10, 209 P.3d at 235, *quoting Ring*, 204 Ariz. 534, ¶ 45, 65 P.3d at 933 (alteration in *Valverde*). On the facts before us, we conclude there was no error, let alone structural error, for several reasons.

**¶9** First, we have found no cases, in Arizona or elsewhere, holding that exclusion of potential witnesses violated the right to a public trial. *See* Ariz. R. Crim. P. 9.3 (court may invoke rule sua sponte and must on request of party); *Tharp v. State*, 763 A.2d 151, 160 (Md. App. 2000) (witnesses sequestered pursuant to the rule "are no longer considered members of the general public for purposes of exclusion from the courtroom during criminal proceedings"); *see also State v. Jordan*, 325 S.W.3d 1, 53 (Tenn. 2010) ("[I]t is clear that the sequestration of witnesses in the ordinary case does not violate a right to a public trial."); *State v. Worthen*, 100 N.W. 330, 331 (Iowa 1904) (sequestration of criminal defendant's witnesses did not infringe upon his constitutional right to a public trial).

**¶10** Second, the exclusion here did not disturb the policy considerations underlying the public trial requirement. With respect to the importance of such, this court has said:

> Our system of justice places great importance on the public nature of criminal trials because "[o]penness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system."

*Tucker*, 231 Ariz. 125, ¶ 8, 290 P.3d at 1254-55, *quoting Gannett Co. v. DePasquale*, 443 U.S. 368, 383 (1979) (alteration in *Tucker*); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 592 (1980) (noting long history of open judicial proceedings "bottomed upon a keen appreciation of the structural interest served in opening the judicial system to public inspection") (Brennan, J., concurring). Here, because the court remained open to all interested parties except

potential witnesses, the exclusion did not impair the policy justifications supporting public trials.

¶11        Furthermore, this case is unlike others in which a violation of the right to a public trial has required reversal. In *Oliver*, the Supreme Court disapproved of Michigan's one-man grand jury system where the petitioner, who was called to testify in secret, was accused of contempt of court, convicted, and sentenced without any break in the secrecy. 333 U.S. at 258, 272-73. In *Waller*, 467 U.S. at 48, the Supreme Court invalidated a trial court's closure to the public of a suppression hearing, and in *Tucker*, 231 Ariz. 125, ¶¶ 7, 15-19, 290 P.3d at 1254, 1257-59, we rejected a trial court's exclusion of the public except for news media. In each case, the reviewing court applied a strict form of judicial scrutiny and concluded the trial court violated the requirement that any courtroom closure be no broader than necessary to protect an overriding interest likely to be prejudiced. *Waller*, 467 U.S. at 48; *Tucker*, 231 Ariz. 125, ¶ 15, 290 P.3d at 1257. And in both *Waller* and *Tucker* the court closed the criminal proceeding to members of the general public over defendant's objection. *Waller*, 467 U.S. at 41-42; *Tucker*, 231 Ariz. 125, ¶ 4, 290 P.3d at 1253-54. The matter before us, however, is quite different. Here, the state noticed all the potential witnesses in accordance with procedural rules, unsanctioned by the trial court and unopposed by Hancock, and the court routinely invoked the rule of exclusion from trial proceedings, something Hancock now characterizes as a denial of a public trial.

¶12        In support of his argument, Hancock cites *State v. Sams*, 802 S.W.2d 635 (Tenn. Crim. App. 1990), where the prosecutor suddenly issued subpoenas during trial for multiple members of the defendant's family who were allegedly disruptive during the testimony of sexual assault victims. The appellate court reversed, finding the prosecutor's "blatant abuse of the trial court's subpoena power for the exclusive purpose of removing the relatives from the courtroom constituted egregious prosecutorial misconduct" which "violated the appellant's constitutional right to a public trial as well as the constitutional right of the relatives to attend the trial." *Id.* at 637.

¶13      Although the instant case bears some outward similarities to *Sams*, we reject Hancock's characterization of the events here as a closure of the proceedings. The record contains no evidence that anyone other than previously noticed potential witnesses were excluded from the proceedings, nor is there any evidence the witnesses were excluded for the offensive purposes Hancock ascribes. Unlike *Sams*, the state disclosed its intention to call both Hancock's wife and his mother before Hancock was arraigned, months before trial, and the record shows the state interviewed Hancock's wife well in advance of trial. Hancock's father and two minor sons were disclosed as potential witnesses weeks before the trial began, at a time when Hancock's disclosure statement listed himself as a potential witness. Although Hancock attempts to suggest an improper motive based on "the prosecutor's use of the subpoena[s]," as noted earlier, all the witnesses had been noticed in advance of trial and there is nothing in the record to indicate the state's motive in doing so was to exclude them from the proceedings. Moreover, Hancock did not at any time object to the state's witness list, move to quash subpoenas, raise any issues with respect to the trial court's invoking the rule of exclusion, or allege any bad faith on the part of the prosecutor as expressly provided for in Rule 9.3(a).

¶14      A dearth of Arizona case law on this issue and research outside Arizona suggests that trial courts rarely inquire as to a party's motivation for securing witnesses or invoking the witness exclusion rule. *See Tharp*, 763 A.2d at 161-62; *see also Sams*, 802 S.W.2d at 642 (Dwyer, J., dissenting) (observing that "a court very rarely delves into the motivation behind a party's desire to subpoena a witness"). In *Tharp*, the Maryland Court of Appeals acknowledged that invocation of the rule "ordinarily triggers no responsibility on the part of the court to make threshold inquiries into why a witness is on the witness list," but suggested "[w]here a judge, applying a reasonable and prudent person standard, would question, on its face, the inclusion on a witness list of a person, the court, rather than hidebound to sequester without inquiry, should resolve promptly the apparently anomalous situation." 763 A.2d at 161-62. Although we encourage trial courts to be mindful of abuses of the subpoena power, we do not find what happened here to be an "anomalous situation" triggering the inquiry contemplated in *Tharp*.

¶15        Hancock nevertheless maintains "the trial court should have recognized that the [prosecutor's] move was substantial enough to constitute a partial closing of the proceedings, and should have proceeded with a *Waller* hearing to determine the propriety of the partial closing."  With appropriate regard for the public nature of judicial proceedings, however, we are hesitant to give credence to such a claim when the defendant at the appropriate time saw no disregard of an important right, *see Levine v. United States*, 362 U.S. 610, 618-19 (1960), and did not raise any such concern in the trial court where it could have been immediately and easily addressed. [3] Further, the record suggests the trial court invoked the rule as a routine precaution, refuting Hancock's characterization of the state's actions as an attempt to exclude family members.  Hancock's argument on appeal appearing to be little more than an afterthought, we find his case distinguishable from those on which he relies.

¶16        Finally, although we have previously noted the "special concern for accommodating the attendance at trial of an accused's family members," *Tucker*, 231 Ariz. 125, ¶ 15, 290 P.3d at 1257, *citing Oliver*, 333 U.S. at 271-72 & 272 n.29, neither *Oliver* nor *Tucker* involved a situation in which a defendant's family members were potential witnesses at trial.  And that concern alone does not compel the outcome Hancock seeks here.  *See Rodriguez v. Miller*, 537 F.3d 102, 108 (2nd Cir. 2007) (confirming family sentiment in *Oliver* is dicta, and "cannot constitute clearly established federal law").  Accordingly, we find no error, structural or otherwise, in the exclusion of potential witnesses from the courtroom, and conclude Hancock was not denied a public trial.

## Sufficiency of the Evidence

¶17        Hancock next argues the evidence at trial was insufficient to sustain his sexual conduct conviction.        He

---

[3] Indeed, the record arguably could be read as suggesting Hancock himself invoked the witness exclusion rule in advance of trial by submitting "Defendant's Proposed Preliminary Jury Instructions" that included a standardized instruction addressing the segregation of witnesses pursuant to the rule.

characterizes that evidence as "demonstrat[ing] only fondling," and argues the trial court erred in denying his motion for acquittal. We review the sufficiency of the evidence de novo, considering the evidence and inferences drawn in the light most favorable to sustaining the verdict. *State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993); *Tucker*, 231 Ariz. 125, ¶ 27, 290 P.3d at 1261. If we conclude any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, we will uphold the conviction. *State v. Ingram*, 239 Ariz. 228, ¶ 17, 368 P.3d 936, 940 (App. 2016).

**¶18** Under A.R.S. § 13-1405(A), [4] the offense of sexual conduct with a minor is committed by "intentionally or knowingly engaging in sexual intercourse . . . with any person who is under eighteen years of age." Sexual intercourse includes "masturbatory conduct," which is not further defined. A.R.S. § 13-1401(A)(4). Hancock asserts the crime of sexual conduct is differentiated from the less serious charge of sexual abuse by requiring "actual stimulation of the victim's vulva." Hancock, however, provides no support for his claim that evidence of stimulation is required to sustain a sexual conduct conviction, nor are we aware of any.

**¶19** At trial, M.H. testified that Hancock had rubbed her "vagina," underneath her panties, back and forth, "sometimes fast, sometime slow," and went "back and forth" between her breasts and her vaginal area "a lot." Viewing the testimony in the appropriate light, we conclude the evidence was sufficient for any rational trier of fact to conclude Hancock's behavior went beyond "mere touching," as he alleges, and constituted the more serious element of masturbatory conduct supporting the sexual conduct charge.

### Aggravating Factors

**¶20** Hancock next challenges the jury's finding that the offenses were committed in the presence of a child for purposes of aggravating his sentence pursuant to A.R.S. § 13-701(D)(18). He

---

[4]Unless otherwise noted, we refer to the statute in effect at the time of Hancock's offenses.

relies on *State v. Burgett*, in which we observed that the purpose of this aggravating factor is "to punish more severely those who expose children to domestic violence." 226 Ariz. 85, ¶ 6, 244 P.3d 89, 91 (App. 2010). In *State v. Torres*, we noted that to find "present" a child who was entirely unaware of an offense would be inconsistent with that purpose. 233 Ariz. 479, ¶ 16, 314 P.3d 825, 828 (App. 2013).

**¶21** Here, M.H. testified that prior to the initiation of the sexual conduct for which Hancock was convicted, her younger brother had fallen asleep in the bed next to her. When asked if she recalled whether he was asleep or awake during the incident, she responded "[h]e was snoring."

**¶22** Notwithstanding the policy considerations identified in *Burgett* and *Torres*, the state contends such statements are dicta, and the "clear terms [of] the presence-of-a-child aggravator require[] only that the child be present, which the brother, J.H., clearly was." We disagree. Although the evidence supports the state's contention that M.H.'s younger brother was there on the same bed when the abuse took place, the § 13-701(D)(18) aggravator cannot be sustained where the only evidence presented indicates the child was entirely unaware of the offense. *Cf. State v. Tucker,* 215 Ariz. 298, ¶¶ 21, 24, 160 P.3d 177, 188 (2007) (third party's "mere presence" insufficient to support "grave risk of death" aggravator); *Torres*, 233 Ariz. 479, ¶ 16, 314 P.3d at 828 ("A child's mere presence in a home where an offense has occurred does not, standing alone, fulfill the statutory requirement absent some evidence that the child was aware of that offense.").[5] We conclude the trial court erred by applying the presence of the child aggravator to increase Hancock's sentences.[6]

---

[5]The inquiry as to whether a child is "entirely unaware" of an offense for purposes of the § 13-701(D)(18) aggravator is necessarily a fact-intensive one, turning on the individual circumstances of the specific case. We express no additional opinion on the prerequisite degree of awareness required, nor do we comment on any hypothetical situation not before us.

[6]Hancock raises an additional challenge to the applicability of the presence of a child aggravator, based on the underlying offenses

**¶23**       The state alternatively argues "any loss of this aggravator is harmless because it does not affect the sentences given." As discussed below, four aggravating factors were found, two of which Hancock does not challenge on appeal. Under harmless error review, however, the state must demonstrate, beyond a reasonable doubt, that the error did not contribute to or affect the sentence. *See Bible*, 175 Ariz. at 588, 858 P.2d at 1191. On this point, the state only suggests "the judge was well aware that M.H.'s younger brother was lying in the bed next to her when she was being abused" and "could still use that fact under the catch-all provision at [her] discretion." Although Hancock does not dispute the state's claim of harmless error, we find its assertion insufficient to meet the state's burden, particularly in view of the additional sentencing error discussed below.

**¶24**       The trial court did not indicate how much weight it assigned to any particular aggravating factor, and we cannot say it certainly would have imposed the same sentence had it not considered the § 13-701(D)(18) factor. Accordingly, we vacate Hancock's sentence and remand for resentencing. *See State v. Johnson*, 229 Ariz. 475, ¶ 20, 276 P.3d 544, 551 (App. 2012) (remanding for resentencing where trial court relied on improper aggravating factors and record did not demonstrate court would necessarily impose same sentence absent improper factors).

**¶25**       Hancock advances a final argument regarding the trial court's use of aggravating factors to enhance his sentence. As noted above, the jury found two aggravators proven beyond a reasonable doubt: that the victim suffered emotional harm, and that the offense was committed in the presence of a child. The trial court found Hancock's betrayal of trust to be a third aggravating factor, and his admission of a prior felony conviction at sentencing a fourth. The court cited the support of Hancock's family and friends in mitigation, and sentenced him as a first-time felony offender under A.R.S. § 13-702(D) to maximum prison terms. Maximum terms

_____

not involving domestic violence. But because we have determined that aggravating factor was erroneously found and relied on, we need not address its applicability where the offense was not charged as a domestic violence offense.

require the finding of only one aggravating factor, §§ 13-701(C), 13-702; *State v. Martinez*, 210 Ariz. 578, ¶ 26, 115 P.3d 618, 625 (2005), and Hancock does not contest either the court's use of the prior felony or the jury's finding that the victim suffered emotional harm.

**¶26** Hancock does, however, challenge the trial court's finding of betrayal of trust as another aggravator. He argues that because that factor was used to enhance his sexual conduct with a minor offense from a class six felony under A.R.S. § 13-1405(B), to a class two felony, relying on the same factor to aggravate his sentence violates the dictates of *State v. Alvarez*, 205 Ariz. 110, ¶ 17, 67 P.3d 706, 711 (App. 2003). In *Alvarez*, we interpreted the catch-all provision of the former aggravating factor statute[7] as "authorizing a trial court to factor into the sentencing equation any *additional* fact or circumstance not . . . reckoned into the statutory scheme elsewhere, either as an element of the offense or a basis for enhancing the range of sentence." *Id.* (emphasis added in *Alvarez*). We thus concluded the trial court erred by employing the same justification used to enhance a sentence as a reason to impose an aggravated sentence. *Id.* ¶ 18.

**¶27** Hancock raised no objection to the court's reference to his betrayal of trust below, thus we would normally review for fundamental and prejudicial error. *See State v. Henderson*, 201 Ariz. 561, ¶ 22, 115 P.3d 601, 608 (2005). In *State v. Vermuele*, however, we recognized that a trial court's pronouncement of sentence is procedurally unique in its finality, providing no clear opportunity to challenge the rendition of a sentence before it becomes final. 226 Ariz. 399, ¶¶ 6, 9, 249 P.3d 1099, 1101-02 (App. 2011). Because the record indicates Hancock was provided no notice of the court's intention to use his betrayal of trust to aggravate his sentence and had no opportunity to object at sentencing, the logic of *Vermuele* applies here and prevents a finding that this claim was forfeited. Accordingly, our inquiry is whether any sentencing error was harmless. *See State v. Lopez*, 231 Ariz. 561, ¶ 4, 298 P.3d 909, 910 (App. 2013).

---

[7] *Alvarez* addressed former § 13-702(C)(19), now codified at § 13-701(D)(25). *See* 2008 Ariz. Sess. Laws, ch. 301, § 23; 2014 Ariz. Sess. Laws, ch. 151, § 2.

¶28     Under the statute in effect at the time of Hancock's offenses, sexual conduct with a minor is enhanced from a class six felony to a class two felony "if the person is or was the minor's parent, stepparent, adoptive parent, legal guardian or foster parent," or the minor's teacher, clergyman, or priest.  2011 Ariz. Sess. Laws., ch. 58, § 1.  Thus, the state argues Hancock's sentence was enhanced because he was M.H.'s stepfather, and was aggravated because he betrayed her trust.  Hancock maintains, however, that the stepparent/stepchild relationship is a relationship of trust, and it is the breach of that trust which is the basis for the statutory enhancement.  We conclude Hancock is correct.

¶29     In 2015, the sexual conduct statute was amended to eliminate the list of relationships that would qualify for sentence enhancement, permitting enhancement "if the person is or was in a position of trust."  2015 Ariz. Sess. Laws, ch. 209, § 1.  The 2015 amendments made clear that relationships of trust include the stepparent/stepchild relationship.  2015 Ariz. Sess. Laws, ch. 209, § 1 (defining "[p]osition of trust" to include a person who is the minor's stepparent).  "[W]hen 'determining the intent of the legislature, the court may consider both prior and subsequent statutes *in pari materia*.'"  *State v. Sweet*, 143 Ariz. 266, 270, 693 P.2d 921, 925 (1985), *quoting Automatic Registering Mach. Co., v. Pima County*, 36 Ariz. 367, 373-74, 285 P. 1034, 1036 (1930).  Moreover, an amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act.  *Id.* at 269, 693 P.2d at 924.  Accordingly, we find the trial court erred when it considered Hancock's betrayal of trust as an aggravating factor after it had been applied to enhance his offense.  *See Alvarez*, 205 Ariz. 110, ¶ 17, 67 P.3d at 711.  And, as previously discussed, because we cannot say with certainty the court would have imposed the same sentences absent the inappropriate factor, we also cannot say this error was harmless.  *Id.* ¶ 19.

## Disposition

¶30     For all of the foregoing reasons, Hancock's convictions are affirmed, but his sentences are vacated and the case is remanded for resentencing.