IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ERICA BETH TRUDELL, *Appellant.*

No. 1 CA-CR 23-0327

FILED 09-12-2024

Appeal from the Superior Court in Maricopa County
No.  CR2022-116782-001
The Honorable Eartha K. Washington, Judge *Pro Tempore Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Phillip Tomas
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

---

**OPINION**

Judge Kent E. Cattani delivered the opinion of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

---

**C A T T A N I**, Judge:

¶1 Erica Trudell appeals her convictions of two counts of aggravated assault and one count of resisting arrest. During trial and other proceedings, the superior court excluded from the courtroom several spectators (including Trudell's family members) who were disruptive, then preemptively excluded any future spectators aligned with Trudell. Trudell did not object. On appeal, Trudell asserts that the superior court violated her constitutional right to a public trial, which she characterizes as structural error under *Waller v. Georgia*, 467 U.S. 39 (1984).

¶2 The appropriate appellate standard of review for an alleged — but unobjected-to — public-trial violation is a matter of first impression in Arizona. We join courts from other jurisdictions in concluding that the defendant must object to excluding spectators from a trial for any resulting error to qualify as structural; absent such an objection, fundamental error review applies. Accordingly, and for reasons that follow, we affirm Trudell's convictions and sentences.

**FACTS AND PROCEDURAL BACKGROUND**

¶3 In May 2022, Officer Le'Duff pulled over a vehicle with no license plate. Officer Le'Duff asked the driver—Trudell—to provide her name and the vehicle identification number, but Trudell refused. Trudell eventually gave her first name but refused to move an object blocking the vehicle identification number on the windshield. After several more queries, Trudell provided her full name and date of birth. With that information, Officer Le'Duff discovered that the vehicle Trudell was driving was not registered in her name. Meanwhile, another officer arrived and asked Trudell to provide registration and identification for the vehicle, but she refused. The officers then attempted to remove Trudell from the vehicle. When Officer Le'Duff reached across Trudell to grab her arm, she bit his finger and attempted to bite him a second time.

¶4    Trudell was charged with two counts of aggravated assault and one count of resisting arrest. Her first trial ended in a mistrial, but after a retrial in June 2023, she was convicted as charged. The superior court suspended sentence and imposed concurrent terms of probation. Trudell timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A)(1).

## DISCUSSION

¶5    During the trials, the superior court ordered three individuals—first Trudell's brother, then her mother, then an unidentified supporter—to leave the courtroom after each one disrupted the proceedings in some manner. The court then closed the courtroom to any future spectators supporting Trudell. The court did not otherwise restrict attendance by the public or others unaffiliated with Trudell.

¶6    Trudell argues the partial closure order violated her constitutional right to a public trial. U.S. Const. amend. VI; Ariz. Const. art. 2, § 24. Trudell contends that, although she did not object to this order in superior court, a public-trial violation is structural error requiring reversal without a showing of prejudice. We consider de novo constitutional claims and assertions of structural error, but we defer to the superior court's factual findings. *State v. Hancock*, 240 Ariz. 393, 396, ¶ 7 (App. 2016); *State v. Dayton*, 257 Ariz. 31, 34, ¶ 7 (App. 2024).

## I.    Additional Facts.

¶7    The superior court's rulings came after substantial disruption by Trudell's supporters that began at the start of the case. At the arraignment, Trudell characterized herself as "a third party intervenor, making a special appearance as an authorized representative for the Defendant." Throughout that hearing, Trudell repeated statements from an unidentified voice in the courtroom.

¶8    During the first trial, Trudell's brother repeatedly spoke to her from the gallery. The court warned that he was not permitted to speak or pass notes to Trudell during proceedings, clarifying that he would be permitted to remain in the courtroom "as long as he is not speaking to Ms. Trudell at all." When Trudell's brother asked the court whether he was "allowed to give [Trudell] any kind of advice," the court stated that he was not allowed to do so and that "[a]ny time that [he] speak[s] with her, [he] will be asked to leave" and "will be escorted out of the courtroom."

¶9    Later that same day, the court again admonished Trudell's brother for conduct in court, noting "[Trudell's brother's] exasperations

when [he is] not liking what is being said" and warning that if he could not control himself, he would be escorted out of the courtroom. The court further stated that Trudell's brother "[had] to make a choice whether or not [he] could control [himself] as an adult and remain in the courtroom or if [he] just need[s] to leave."

¶10 While the jury was deliberating, Trudell's mother walked in and out of the courtroom while using her cell phone. The court told Trudell's mother that if she wanted to remain present, she could not be on her phone in the courtroom, whether texting or making phone calls. When Trudell's mother tried to engage with the court, the court asked her to "step out of the courtroom." The court stated that Trudell's mother was "not welcome" in the courtroom because the court did not "want to fight with her" about using her phone.

¶11 The jury in Trudell's first trial could not reach a verdict, and the court declared a mistrial. The court noted that in the event of a retrial, "the order would still stand"—that Trudell's mother and brother "cannot be present."

¶12 When Trudell's brother came to a pretrial conference a month later, the court asked him to leave because he had been "excluded . . . from the courthouse based on [his] actions." During the second trial, the court noticed an unidentified man in the gallery "recording" the proceedings. Observing that the man had been present when the judge directed Trudell to stop recording and was thus aware that he was not allowed to record, the court asked him to leave.

¶13 After this incident, the court closed the courtroom to any spectators aligned with Trudell:

> Every person who has come into this courtroom with Ms. Trudell has made a decision, including herself, that she's going to be recording. That's simply not allowed. At this point, I'm banning anyone from being present with [Trudell] for that specific reason. Every person who has come in here has either been on the phone, her mom, her brother has acted up, he's been banned, and this gentleman . . . understood that [he was] not allowed to record this hearing, made a choice to do that anyway[].
>
> For that reason, no one is going to be allowed to be present with Ms. Trudell. . . . I'm not going to allow this hearing to be disrupted because folks can't follow the rules. . . .

4

. . . .

No one else, friends, family, or anyone else, based on the amount of times that we've [had] problems with folks either disrupting the jury or attempting to disrupt the jury recording, will be allowed to be present with [Trudell].

¶14    The next day, the court prevented one of Trudell's friends from attending the trial. The court reiterated its prior order and rationale:

Based on everything that has happened, that I spoke about yesterday, nobody on behalf of Ms. Trudell is allowed in the courtroom . . . . [E]very time that someone comes in, they are going to be escorted if they are here on behalf of her because of the recording issue and disruption issues that continue to happen. That is my order.

¶15    At no point did Trudell object to the court's removal of her supporters or the general prohibition against others attending on her behalf.

## II.    Appellate Standard of Review.

¶16    The parties dispute the standard of review applicable to Trudell's claim of error. Trudell asserts that, lack of objection notwithstanding, wrongful denial of a public criminal trial is structural error warranting automatic reversal. Structural error is a narrow category reflecting error that "deprive[s] defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence" and in the face of which "no criminal punishment may be regarded as fundamentally fair." *State v. Ring*, 204 Ariz. 534, 552, ¶ 45 (2003) (internal quotation marks omitted) (quoting *Neder v. United States*, 527 U.S. 1, 8–9 (1999)); *see also State v. Anderson*, 197 Ariz. 314, 323–24, ¶ 22 (2000) (structural errors "create 'defects . . . in the trial mechanism' itself [and] affect the 'entire conduct of the trial from beginning to end,' damag[ing] 'the framework within which the trial proceeds'" (ellipsis in original) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991)). If structural error exists, reversal is required regardless whether the defendant objected in superior court and without the need for any separate showing of resulting prejudice. *See State v. Valverde*, 220 Ariz. 582, 585, ¶ 10 (2009).

¶17    The State counters that, although the right to a public trial is constitutionally guaranteed, the right may nevertheless be waived and is

thus, absent contemporaneous objection, subject to fundamental error review. For error that does not rise to the level of structural error, if the defendant fails to object at trial, we review only for fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20 (2005). Under this standard, the defendant must establish error that qualifies as fundamental: "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). Unless the error fits within the exceptional third prong, *see id.* at 141–42, ¶ 20, the defendant "must make a separate showing of prejudice" under the unique facts of the case, *id.* at 142, ¶ 21.

**¶18** Trudell relies on the United States Supreme Court's ruling in *Waller* to support her assertion of structural error. In that case, the Court defined a four-part test for assessing whether closure of a criminal proceeding was permissible and held that closure of a suppression hearing in that case was unjustified. *Waller*, 467 U.S. at 48–49. The Court declined to require that the defendants who objected to the closure prove prejudice to obtain relief. *Id.* at 42 & n.2, 49–50 & n.9.

**¶19** Several Arizona cases have cited *Waller* for the principle that violating the constitutional public-trial guarantee is structural error, but they have done so without analyzing the provenance or scope of that classification. *See, e.g., Ring*, 204 Ariz. at 552–53 & n.16; *State v. Tucker*, 231 Ariz. 125, 131, ¶ 7 (App. 2012); *Hancock*, 240 Ariz. at 396, ¶ 7; *Dayton*, 257 Ariz. at 34–35, ¶¶ 1, 9 (citing *Ring* and *Hancock*, which rely on *Waller*). We have reversed convictions on this basis without a separate showing of prejudice—but only in cases in which the defendant objected to the closure or partial closure of the proceedings. *See Dayton*, 257 Ariz. at 34, 36, ¶¶ 1, 14; *Tucker*, 231 Ariz. at 130–31, 137, ¶¶ 4, 24; *cf. Hancock*, 240 Ariz. at 396, 398, ¶¶ 6–7, 16 (finding "no error, structural or otherwise," when reviewing defendant's public-trial claim raised for the first time on appeal). No Arizona court has analyzed whether *Waller* mandates a presumption of prejudice and automatic reversal for a public-trial violation notwithstanding the absence of an objection to a closure or partial closure of trial proceedings. We conclude it does not.

**¶20** *Waller* expressly addressed closure of criminal proceedings "over the objection of the defendant." 467 U.S. at 40–41. And the Court characterized its holding as, "under the Sixth Amendment any closure of a suppression hearing *over the objections of the accused* must meet" the four-part test it announced. *Id.* at 47 (emphasis added). *Waller* itself

distinguished between defendants who objected to the closure and those who did not. *Id.* at 42 & n.2. Four of the five petitioners in *Waller* had objected to closing the suppression hearing; the fifth petitioner, however, "concurred in the prosecution's motion to close the suppression hearing." *Id.* at n.2. The Court remanded the fifth petitioner's case to allow the state court to assess whether the petitioner who had agreed to the closure was "procedurally barred from seeking relief as a matter of state law." *Id.* *Waller* thus presupposed that the public-trial right could be waived and applied a presumption of prejudice requiring reversal for a public-trial violation only when the defendant had objected to the closure.

¶21 Our conclusion that automatic reversal is not warranted for an unobjected-to public trial violation is consistent with other jurisdictions that have addressed the issue. The Colorado Supreme Court, for example, rejected a *Waller* challenge because the defendant had not objected to a known closure of the courtroom during jury selection. *Stackhouse v. People*, 386 P.3d 440, 441, ¶ 1 (Colo. 2015). The court highlighted that in *Waller*, the United States Supreme Court "expressly and repeatedly limited its holding to closures that elicited a contemporaneous objection from the defendant." *Id.* at 444, ¶ 12. The court further noted that "the Supreme Court itself has recognized, albeit in dicta, that a defendant waives his right to a public trial by failing to object." *Id.* at ¶ 14 (citing *Peretz v. United States*, 501 U.S. 923, 936 (1991), which cited *Levine v. United States*, 362 U.S. 610, 619 (1960), "for the proposition that 'failure to object to closing of [the] courtroom is waiver of [the] right to public trial' to support its conclusion that '[t]he most basic rights of criminal defendants are . . . subject to waiver'" (alterations in original)). The Colorado court thus concluded that, because *Waller* did not "address[] waiving the public trial right by not objecting—and *Peretz* actually endorsed such a rule of waiver—Colorado [courts] 'may determine' whether a defendant who does not object to a known closure 'is procedurally barred from seeking relief as a matter of state law.'" *Id.* (citing *Waller*, 467 U.S. at 42 n.2).

¶22 The Colorado Supreme Court also noted that there could be "sound strategic reasons for a lawyer to waive a client's right to a public trial" and concluded that the right is thus among those where "[d]efense counsel stands as captain of the ship." *Id.* at 445, ¶ 15 (alteration in original and citation omitted). "Allowing a defense attorney who stands silent during a known closure to then seek invalidation of an adverse verdict on that basis would encourage gamesmanship, and any 'new trial would be a "windfall" for the defendant, a result that the *Waller* Court explicitly tried to prevent.'" *Id.* at 445–46, ¶ 16 (citation omitted).

¶23     Other state supreme courts have similarly held that a defendant waives the right to a public trial by failing to object to a known courtroom closure. *Tarpey v. State*, 523 P.3d 916, 930, ¶ 44 (Wyo. 2023) (holding that a defendant waived his right to public trial by not objecting to the court's partial closure order due to COVID-19 protocols despite having multiple opportunities to do so); *State v. Pinno*, 850 N.W.2d 207, 225–26, ¶ 63 (Wis. 2014) (holding that a defendant waives the right to a public trial by failing to object despite knowing that the court has ordered the public to leave the courtroom); *Robinson v. State*, 976 A.2d 1072, 1083 (Md. 2009) (holding that "a claimed violation of the right to a public trial must be preserved for appellate review by a timely objection at trial"); *State v. Drummond*, 854 N.E.2d 1038, 1053, 1055–56, ¶¶ 43, 59 (Ohio 2006) (holding that a defendant waived the right to a public trial by not objecting despite knowing that spectators were excluded from the courtroom during testimony due to their behavior and witnesses' fear of retaliation); *State v. Butterfield*, 784 P.2d 153, 154, 157 (Utah 1989) (holding that a defendant waived his right to a public trial by not objecting to a known courtroom closure limiting attendance to only the jury, court personnel, counsel for each party, and the defendant due to nature of offense and the "tender age of the victim").

¶24     We agree with the reasoning of these other courts. Although a criminal defendant has a right to a public trial under the Sixth Amendment of the United States Constitution and Article 2, Section 24, of the Arizona Constitution, that right can be—and in this case was—waived by failing to object to the closure or partial closure of trial proceedings. *See Peretz*, 501 U.S. at 936 (noting that even "[t]he most basic rights of criminal defendants are . . . subject to waiver"). Accordingly, the unobjected-to partial closure of trial proceedings alleged as error here is best evaluated under the rubric of unobjected-to fundamental error rather than as structural error under *Waller*.

## III.    Fundamental Error Review.

¶25     To succeed on fundamental error review, Trudell must show error that is fundamental and that caused her prejudice. *See Henderson*, 210 Ariz. at 567, ¶¶ 19–20. She has not done so.

¶26     Trudell has arguably failed to show error, much less fundamental, prejudicial error. Under *Waller*:

> [1] the party seeking to close the hearing must advance an
> overriding interest that is likely to be prejudiced, [2] the

closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] [the court] must make findings adequate to support the closure.

467 U.S. at 48. In the abstract, the superior court's blanket prohibition against further attendance by anyone supporting Trudell could be deemed overbroad. But given the unique circumstances presented—including repeated violations of the court's directives by each of Trudell's supporters, which threatened constant disruption of the trial and infringement on the jurors' privacy—Trudell's failure to object to the scope of the order suggests a recognition that the order was in fact necessary under the circumstances.

¶27        Moreover, even if the partial closure were deemed overbroad, Trudell does not assert that any such error was fundamental. She likewise does not articulate any prejudice from the partial closure, and none is apparent. Accordingly, Trudell has not established fundamental, prejudicial error warranting reversal.

**CONCLUSION**

¶28        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV

9