NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TOMMY JONES, III, *Appellant.*

No. 1 CA-CR 24-0434

FILED 07-29-2025

Appeal from the Superior Court in Maricopa County
No. CR2023-120307-001
The Honorable Monica S. Garfinkel, Judge, *Pro Tempore*

**AFFIRMED**

COUNSEL

Kenney Law LLC, Florence
By Anthony L. Kenney
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Celeste Kinney
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge David D. Weinzweig and Judge Anni Hill Foster joined.

_____

**F U R U Y A**, Judge:

**¶1**        Tommy Jones III ("Jones") appeals his convictions for aggravated assault and misdemeanor assault. He argues the evidence was insufficient to support his aggravated assault conviction and that the court improperly admitted prior inconsistent statements as substantive evidence. We disagree and affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        In April 2023, Tess (a pseudonym) called 911 to report that her ex-boyfriend, Jones, had assaulted her. She told dispatch Jones broke her phone, took her car keys, and fled in a white truck. Officer Graham responded to their residence and found Tess crying, with her shirt torn.

**¶3**        Tess told Officer Graham the altercation began inside her apartment when she tried to close the door behind Jones, angering him. Jones forced the door open, grabbed Tess, and threw her over a couch, causing her to hit her head. When she tried to call for help, he took her phone and smashed it. She then got into her car to leave, but Jones opened the passenger door, reached across the seats, and choked her, warning, "You're going to make me hurt you." He choked her so forcefully she saw black and white and feared losing consciousness. The confrontation ended when a neighbor approached, prompting Jones to leave.

**¶4**        Officer Graham transported Tess to the Scottsdale Family Advocacy Center, where a forensic nurse documented injuries consistent with strangulation. In a follow-up interview, Tess said she had overreacted and no longer wished to pursue charges, though she did not retract her prior statements. In his statement to police, Jones admitted retrieving his phone from Tess but denied any physical contact.

**¶5**        At trial, Tess recanted her earlier claims. She denied Jones choked her and testified that because she was upset at Jones, she exaggerated to get him in trouble. She also submitted an affidavit to that effect.

**¶6**         Following the three-day trial, the jury convicted Jones of aggravated assault by strangulation and misdemeanor assault. During trial, Jones also stipulated that he had four prior felony convictions and to being on probation at the time of the offense. The court imposed a twelve-year sentence for aggravated assault and 180 days for the misdemeanor assault, with credit for time served.

**¶7**         Jones timely appealed. We have jurisdiction under Article VI, Section 9 of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

**¶8**         Jones raises two questions on appeal: (1) whether the evidence was sufficient to support the aggravated assault conviction, and (2) whether the trial court erred by admitting Tess's prior inconsistent statements as substantive evidence. We address each in turn.

## I.         Sufficiency of the Evidence

**¶9**         We review a claim of insufficient evidence de novo. *State v. Rios*, 255 Ariz. 124, 131 ¶ 22 (App. 2023); *State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011). In doing so, we view the evidence in the light most favorable to sustaining the verdict and resolve all reasonable inferences against the defendant. *State v. Fierro*, 254 Ariz. 35, 38 ¶ 2 (2022). We do not reweigh evidence or reassess witness credibility on appeal. *State v. Fischer*, 242 Ariz. 44, 52 ¶ 30 (2017).

**¶10**         To sustain Jones's conviction for aggravated assault by strangulation, the record must contain probative evidence from which a rational juror could find that he "intentionally or knowingly imped[ed] the normal breathing or circulation of blood of [Tess] by applying pressure to the throat or neck." A.R.S. § 13-1204(B)(1); *see State v. Hancock*, 240 Ariz. 393, 398 ¶ 17 (App. 2016). Reversible error exists only when there is a complete absence of such evidence. *State v. Bolivar*, 250 Ariz. 213, 227 ¶ 51 (App. 2020); *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996).

**¶11**         Here, the jury heard Tess's 911 call and reviewed body-worn camera footage capturing her immediate description of the assault and her visible injuries. It also heard from the forensic nurse who examined Tess and took photographs of her injuries. While reviewing those images for the jury, the nurse identified petechiae and bruising and explained that Tess also reported dizziness, difficulty swallowing, and involuntary urination. The nurse testified that these findings were consistent with strangulation.

During the exam, Tess described the assault, and that account matched what she told Officer Graham earlier that day. Her statements were further corroborated by surveillance footage showing Jones entering and exiting her car shortly before leaving in a white truck. Additionally, the jury heard evidence of Jones's statements to Tess such as, "You're going to make me hurt you." *See State v. Bearup*, 221 Ariz. 163, 168 ¶ 16 (2009); *State v. Harm*, 236 Ariz. 402, 406 ¶ 13 (App. 2015).

**¶12** Although the trial presented competing narratives, it was the jury's role to resolve factual conflicts and assess credibility. *See Fischer*, 242 Ariz. at 50 ¶ 19; *State v. Buccheri-Bianca,* 233 Ariz. 324, 334 ¶ 38 (App. 2013). The jury could reasonably credit Tess's initial statements to law enforcement, which were consistent with medical findings and other physical evidence introduced at trial. *See State v. Rivera*, 210 Ariz. 188, 192 ¶ 20 (2005). That evidence gave the jury a sufficient basis to find each element of the offense proven beyond a reasonable doubt. *See Hancock*, 240 Ariz. at 398 ¶ 17; *Bolivar*, 250 Ariz. at 227 ¶ 51. We discern no error.

## II. Admission of Prior Inconsistent Statements

**¶13** Jones also argues that the court's admission of Tess's prior inconsistent statements as substantive evidence violated Arizona Rule of Evidence 403. Jones points to the five factors enumerated in *State v. Allred*, 134 Ariz. 274 (1982), to argue that admission of Tess's statements to Officer Graham and the forensic nurse were more prejudicial than probative. Because Jones did not raise this objection at trial, we review for fundamental error only. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 19 (2005).

**¶14** When evaluating the danger of unfair prejudice under Rule 403 in admitting prior inconsistent statements as substantive evidence, we must consider whether:

> 1) the witness being impeached denies making the impeaching statement, and 2) the witness presenting the impeaching statement has an interest in the proceeding and there is no other corroboration that the statement was made, or 3) there are other factors affecting the reliability of the impeaching witness, such as age or mental capacity, . . . 4) the true purpose of the offer is substantive use of the statement rather than impeachment of the witness, 5) the impeachment testimony is the only evidence of guilt.

*Allred*, 134 Ariz. at 277.

4

**¶15** Here, Tess did not offer any testimony denying she made the statements at issue. Indeed, Officer Graham's body camera recorded many of them verbatim. Instead, she attempted to explain them away as exaggerations to embroil Jones in trouble as revenge. Nor did Jones demonstrate that either Officer Graham or the forensic nurse had any personal interest in the outcome of the case. And in any event, no evidence in this record suggests these witnesses acted in any way besides their professional capacities. Neither does Jones allege any incapacity or other factors diminishing Officer Graham's or the forensic nurse's credibility. Further, Officer Graham's and the forensic nurse's testimonies were not the only evidence of Jones's guilt. The body-worn camera footage was highly probative and reliable evidence. And other corroborating evidence included photographs, medical reports, the 911 recording, and surveillance camera footage. Thus, this case presents none of the reliability concerns identified in *Allred*.

**¶16** Moreover, the court properly instructed the jury on evaluating witness credibility, and the statements' probative value was not substantially outweighed by the danger of unfair prejudice. *See State v. Allen*, 253 Ariz. 306, 334 ¶ 62 (2022) (absent contrary evidence, appellate courts must "presume[] that jurors follow the court's instructions"). As such, the court did not err, let alone fundamentally err, in admitting Tess's inconsistent statements.

## CONCLUSION

**¶17** We affirm.

