398 P.3d 584

**The STATE of Arizona, Appellee,**

v.

**Francisco Miguel URREA, Appellant.**

**No. 2 CA-CR 2015-0416**

Court of Appeals of Arizona, Division 2.

Filed May 30, 2017

**520**

Mark Brnovich, Arizona Attorney General, Joseph T. Maziarz, Chief Counsel, Phoenix, By Amy Pignatella Cain, Assistant Attorney General, Tucson, Counsel for Appellee

Gallego Law Firm, P.C., Tucson, By Rafael F. Gallego, Counsel for Appellant

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Staring concurred and Judge Miller dissented.

## OPINION

ESPINOSA, Judge:

¶ 1 After a jury trial, Francisco Urrea was convicted of transportation of a narcotic drug for sale and sentenced to a presumptive five-year prison term. On appeal, he renews arguments rejected by the trial court that the drugs found in his vehicle should have been suppressed and that the court imposed an inadequate sanction after finding a *Batson* [1] violation. He also alleges, for the first time, that the court erroneously admitted improper "profile testimony" at trial. Finding no error, we affirm.

### Factual and Procedural Background

¶ 2 We view the evidence in the light most favorable to upholding Urrea's conviction. *State v. Welch*, 236 Ariz. 308, ¶ 2, 340 P.3d 387, 389 (App. 2014). In June 2014, a sheriff's deputy stopped Urrea's vehicle for a traffic violation. After Urrea consented to a search, the deputy found a package containing over sixty grams of cocaine hidden in the rear cargo area of Urrea's vehicle.

¶ 3 Urrea was indicted on one count of possession of a narcotic drug for sale and one count of transportation of a narcotic drug for sale. He sought suppression of the drugs before trial, arguing the "stop, seizure, search, [and] arrest" had been illegal and sought to preclude a police detective from testifying as an expert for the state. The trial court denied the suppression motion after an evidentiary hearing and heard arguments regarding the state's expert immediately before Urrea's trial began. The court ultimately allowed the expert to testify but precluded him from explaining the significance of a baseball cap in Urrea's car and a tattoo on

---

1. *Batson v. Kentucky*, 476 U.S. 79, 84, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (Equal Protection Clause forbids rejecting potential jurors because of race).

Urrea's arm allegedly depicting a "Narco Saint."

¶ 4 During jury selection, Urrea raised a *Batson* challenge, arguing the state had improperly struck from the venire jurors with "Hispanic ethnic background[s]." After directing the prosecutor to identify the reasons for its strikes, the trial court denied three strikes for which it found the state had failed to provide adequate race-neutral reasons and reinstated the prospective jurors. Two of the reinstated jurors sat on the jury, which convicted Urrea of both charges after a two-day trial. The state subsequently dismissed the possession count, and the court sentenced Urrea as described above. We have jurisdiction over this appeal pursuant to A.R.S. §§ 12–120.21(A)(1), 13–4031, and 13–4033(A)(1).

## Motion to Suppress

¶ 5 Urrea first contends the trial court erred in denying his motion to suppress evidence obtained from the warrantless search of his vehicle. We review the court's rulings on a suppression motion for an abuse of discretion, deferring to factual findings but reviewing de novo constitutional and purely legal issues. *State v. Snyder*, 240 Ariz. 551, ¶ 8, 382 P.3d 109, 112 (App. 2016). We consider only evidence presented at the suppression hearing and view that evidence in the light most favorable to upholding the court's ruling. *State v. Caraveo*, 222 Ariz. 228, n.1, 213 P.3d 377, 378 n.1 (App. 2009).

¶ 6 At a hearing in July 2015, Deputy Nikola Zovko testified he had stopped Urrea's vehicle after he observed it "merge[ ] over into the right-hand lane without its turn signal, causing another vehicle to abruptly slam on its brakes." After obtaining Urrea's license, registration, and insurance documents, the deputy asked Urrea to step out and wait at his patrol car while he conducted a records check, "[p]rimarily [as] a safety issue." Urrea complied and throughout the stop was cooperative and friendly.

¶ 7 Before completing the traffic stop, the deputy approached Urrea's vehicle a second time to check the Vehicle Identification Number (VIN) against the registration documents and a report he had received "from dispatch." While doing so, he observed items in the car that suggested to him Urrea might be transporting drugs, including multiple air-fresheners and symbols on a baseball cap and tattooed on Urrea's arm associated with drug trafficking, and he asked Urrea if there were any drugs in the car. Urrea said there were not and told the deputy he "c[ould] check." Urrea then signed a "consent to search" form and was placed in the back of the deputy's vehicle while the deputy and another officer searched Urrea's car. The package of cocaine was found concealed behind the spare tire.

¶ 8 Urrea argued to the trial court that the initial stop was invalid, that Deputy Zovko illegally had "extended the detention to check federal [VIN] stickers," and that the search of his vehicle had exceeded the scope of his consent. Ruling from the bench, the court concluded the traffic stop was valid, the subsequent "inspection of a VIN number [wa]s within the normal discretion of an officer in a routine traffic stop," and Urrea had consented to a search which "encompasse[d] all voids within the vehicle." Although the court found "no unreasonable detention," it noted it was "admitting the evidence as a consent search and not on any other basis." On appeal, Urrea renews his arguments that the deputy impermissibly " 'detour[ed]' from the mission of the underlying traffic stop" and the subsequent search of his vehicle was not based on "valid consent." He does not challenge the validity of the traffic stop.

¶ 9 Regarding the duration of the stop, Urrea contends it was illegally prolonged not when the deputy returned to Urrea's vehicle to check the VIN numbers, as he argued at the suppression hearing, but when he asked Urrea to "step out of the car and walk back to [the deputy's] vehicle." Because Urrea did not make this argument to the trial court, we review only for fundamental error. *State v. Brown*, 233 Ariz. 153, ¶ 12, 310 P.3d 29, 34 (App. 2013); *see also State v. Lopez*, 217 Ariz. 433, ¶ 4, 175 P.3d 682, 683 (App. 2008) (objection on one ground does not preserve issue on another ground). But Urrea has not argued fundamental error, and although we will not ignore such error if we see it, *see State v. Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d 641, 650 (App. 2007), Urrea has failed to show error of any kind occurred here. *See also State v. Moreno–Medrano*, 218 Ariz.

349, ¶ 17, 185 P.3d 135, 140 (App. 2008) (fundamental error waived if not argued).

¶ 10 First, Urrea has not explained how his being directed to exit his vehicle while the deputy conducted a records check illegally prolonged the stop. As we have consistently held, "[l]aw enforcement officers are permitted to remove occupants from a vehicle as a safety precaution." *State v. Kjolsrud*, 239 Ariz. 319, ¶ 13, 371 P.3d 647, 651 (App. 2016), *citing Pennsylvania v. Mimms*, 434 U.S. 106, 117 n.6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Newell v. Town of Oro Valley*, 163 Ariz. 527, 529, 789 P.2d 394, 396 (App. 1990). And, as noted in *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop ... do not convert the encounter into something other than a lawful seizure, so long as the inquiries do not measurably extend the duration of the stop." Although the "[a]uthority for the seizure ... ends when tasks tied to the traffic stop infraction are— or reasonably should have been—completed," *Rodriguez v. United States*, —— U.S. ——, ——, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015), Urrea has provided nothing to support that either the records check or check of the VIN number illegally prolonged his detention. In fact, *Rodriguez* specifically permits "ordinary inquiries incident to" traffic stops, which include "checking the driver's license" and "inspecting the automobile's registration and proof of insurance." *Id.* at ——, 135 S.Ct. at 1615, *quoting Illinois v. Caballes*, 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). A check of a VIN number is a permissible inquiry sufficiently related to a traffic stop. *See New York v. Class*, 475 U.S. 106, 118–19, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (upholding VIN number checks in both windshield and doorjamb); *United States v. Ramos*, 194 F.Supp.3d 1134, 1167 (D.N.M. 2016) (concluding VIN inspection is lawful part of traffic stop).

¶ 11 Moreover, even had Deputy Zovko illegally prolonged the traffic stop when he asked Urrea to "step back to his patrol vehicle in order to discuss the reason for the stop," the ensuing conversation appears to have been entirely consensual. *Kjolsrud*, 239 Ariz. 319, ¶ 10, 371 P.3d at 650 ("Once the time needed to complete this mission has passed, an officer 'must allow a driver to continue on his way unless ... the encounter between the driver and the officer becomes consensual.' "), *quoting State v. Sweeney*, 224 Ariz. 107, ¶ 17, 227 P.3d 868, 873 (App. 2010). Not only did the sheriff's deputy describe Urrea as "overly friendly" during the encounter and "extremely eager to answer the questions," but he testified Urrea had answered questions even before they could be asked.

¶ 12 Urrea nevertheless argues his consent was not voluntary because he had not been read his rights pursuant to *Miranda*,[2] he had been told other law enforcement officers were on their way, and there was a lack of any sort of intervening circumstance to break the causal connection between the illegal detention and his consent. In support, Urrea reviews considerable search and seizure law and cites factors the Supreme Court has identified as relevant in determining whether the taint of illegal conduct is sufficiently attenuated from evidence subsequently obtained by voluntary means. *See Brown v. Illinois*, 422 U.S. 590, 602–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *see also State v. Guillen*, 223 Ariz. 314, ¶ 14, 223 P.3d 658, 661 (2010). But Urrea has not demonstrated an illegal or custodial detention here, and he has failed to explain how any of the factors he cites apply to his case. Accordingly, Urrea has not shown the trial court committed any error, much less fundamental error, in denying his motion to suppress.

### *Batson* Remedies

¶ 13 Urrea next contends the trial court should have granted his request for a mistrial after it found the state had struck three Hispanic jurors without a sufficiently race-neutral justification for doing so. He does not, however, explain how the trial court erred in forfeiting the state's strikes rather than employing the drastic remedy of a mistrial.

¶ 14 In *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court held that the use of peremptory strikes to exclude potential jurors on the

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

basis of race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. When a constitutional violation is alleged, *Batson* and its progeny require a three-step inquiry by the trial court: first, the party challenging the strike must make a prima facie showing of discrimination; second, the striking party must provide a race-neutral reason for the strike; and third, if a race-neutral explanation is provided, the trial court must determine whether the challenger has carried its burden of proving purposeful racial discrimination. *State v. Garcia*, 224 Ariz. 1, ¶ 21, 226 P.3d 370, 379 (2010).

¶ 15 Here, the trial court determined Urrea had made a prima facie case of discrimination when the state used five of its six strikes on potential jurors with "Hispanic ethnic background[s]." The state offered race-neutral reasons for the strikes, but failed to convince the court that three of the five challenged strikes were constitutionally valid.[3] Over Urrea's objection, the court denied the state's strikes it found invalid, reinstated the struck jurors to the venire, and empaneled a jury that included two of the improperly excluded jurors. Urrea asserts, as he did below, that the only acceptable remedy to the *Batson* violation was to strike the entire jury panel and "start[ ] anew … with a new jury pool." As there is no published case law addressing this issue in Arizona, we review *Batson* and its progeny among other jurisdictions in some detail.

¶ 16 Although discriminatory uses of peremptory challenges were deemed unconstitutional over three decades ago, courts have taken varied approaches to remedy *Batson* violations. *See generally* Jason Mazzone, *Batson Remedies*, 97 Iowa L. Rev. 1613 (2012) (setting out cases adopting different responses to *Batson* incursions). The *Batson* court itself addressed remedies for the constitutional violation only briefly, stating in a footnote:

> In light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today. For the same reason, we express no view on whether it is more appropriate in a particular case, upon a finding of discrimination against [improperly struck] jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire.

*Batson*, 476 U.S. at 99 n.24, 106 S.Ct. 1712 (citations omitted).

¶ 17 The appropriateness of specific remedies has not been expanded upon in subsequent Supreme Court cases, although the federal appellate courts have generally interpreted *Batson* as "accord[ing] significant latitude" in the trial court's ability to fashion an appropriate remedy. *Koo v. McBride*, 124 F.3d 869, 873 (7th Cir. 1997); *see also McCrory v. Henderson*, 82 F.3d 1243, 1247 (2d Cir. 1996) (concluding *Batson* error "remediable in any one of a number of ways"). In *United States v. Walker*, for example, the Eleventh Circuit noted that courts are encouraged to "take into account the practicalities of the situation" and stated it would not reverse the trial court's remedy of a *Batson* violation absent an abuse of discretion. 490 F.3d 1282, 1294 (11th Cir. 2007). Generally, the federal appellate courts have upheld either of the two remedies identified in the Supreme Court's *Batson* decision. *Id.* at 1294–95.

¶ 18 State courts, however, have approached remedies to *Batson* violations in various ways. Trial courts in South Carolina, for example, are required to select a new jury de novo when *Batson* violations are found. *See State v. Jones*, 293 S.C. 54, 358 S.E.2d 701, 704 (1987), *abrogated on other grounds by State v. Chapman*, 317 S.C. 302,-454 S.E.2d 317, 319 (1995).[4] North Carolina has followed suit, with its supreme court stating that recommencing the jury selection

---

**3.** The state has not challenged the court's *Batson* rulings on appeal, contending only that the remedy imposed was adequate.

**4.** Reseating improperly struck jurors was subsequently upheld as a permissible remedy where a

party continues to improperly exercise peremptory challenges on subsequent venires. *See State v. Franklin*, 318 S.C. 47, 456 S.E.2d 357, 360 (1995).

process with a new panel of prospective jurors is the better cure. *See State v. McCollum*, 334 N.C. 208, 433 S.E.2d 144, 159 (1993) (noting primary goal of achieving fair trial, and difficulty, under its procedural practices, of asking improperly excluded juror "to remain unaffected by that recent discrimination, and to render an impartial verdict without prejudice toward either the State or the defendant"). In New Jersey, the single, bright-line remedy of dismissing the already selected jurors, quashing the venire, and starting jury selection anew remained the only approach for nearly thirty years until a "broader set of remedies" was adopted in 2013. *See State v. Andrews*, 216 N.J. 271, 78 A.3d 971, 984 (2013). The California Supreme Court similarly modified its longstanding precedent in 2002, to the extent the singular remedy of a mistrial was ostensibly required. *See People v. Willis*, 27 Cal.4th 811, 118 Cal.Rptr.2d 301, 43 P.3d 130, 137–39 (2002).

¶ 19 In contrast, Missouri's courts have for many years preferred reseating improperly struck jurors. There, *Batson* challenges are required to be made before the venire's dismissal "while there remains time to correct the error by disallowing the offending strike" thereby maximizing "[j]udicial time and resources ... because there is no need to quash the jury and call a new venire." *State v. Parker*, 836 S.W.2d 930, 936 (Mo. 1992). In requiring reseating, the Missouri Supreme Court has specifically noted its concern for protecting, to the greatest extent possible, the equal protection rights of the excluded venirepersons. *Id.* at 935; *State v. Hampton*, 163 S.W.3d 903, 905 (Mo. 2005) (reseating "vindicates the equal protection rights both of the accused and the stricken venireperson"). Other courts that favor reseating have observed that commencing jury selection anew effectively rewards the offending party by ensuring the improperly struck juror does not participate in that trial. *See, e.g., Willis*, 118 Cal.Rptr.2d 301, 43 P.3d at 137 (observing "situations can arise in which the remedy of mistrial and dismissal of the venire accomplish nothing more than to reward improper voir dire challenges").

¶ 20 The majority of states, however, have allowed the trial court discretion to apply either of the remedies contemplated by the *Batson* court. *See Coleman v. Hogan*, 254 Va. 64, 486 S.E.2d 548, 549 (1997) (agreeing with "majority of states that the choice of [*Batson* violation] remedy should be within the discretion of the trial court"); *Jones v. State*, 343 Md. 584, 683 A.2d 520, 525–26 (1996) (same).[5] A few jurisdictions have fashioned additional remedies. For example, extra peremptory challenges to the party offended by unconstitutional challenges have been upheld in New York and Pennsylvania, *People v. Chin*, 3 A.D.3d 574, 771 N.Y.S.2d 158, 159 (2004); *Commonwealth v. Hill*, 727 A.2d 578, ¶ 15 (Pa. Super. Ct. 1999), and further penalties for repeated violations are available in California, *Willis*, 118 Cal.Rptr.2d 301, 43 P.3d at 137.

¶ 21 As a matter of first impression in Arizona,[6] we note that each of the two main

5. *See also State v. Morales*, 71 Conn.App. 790, 804 A.2d 902, 920 n.27 (2002) (concluding state law does not require jury selection start anew after *Batson* challenge sustained); *Jefferson v. State*, 595 So.2d 38, 41 (Fla. 1992) (proceeding with improperly struck juror may be appropriate remedy in absence of prejudice); *Holmes v. State*, 273 Ga. 644, 543 S.E.2d 688, 691 (2001) (reseating improperly struck juror did not run afoul of constitutional mandate); *Haschke v. Uniflow Mfg. Co.*, 268 Ill.App.3d 1045, 206 Ill.Dec. 387, 645 N.E.2d 392, 396 (1994) (vesting trial court with discretion to fashion remedy for *Batson* violation); *Koo v. State*, 640 N.E.2d 95, 100 (Ind. Ct. App. 1994) (remedy for *Batson* violation left to trial court's discretion); *Commonwealth v. Fruchtman*, 418 Mass. 8, 633 N.E.2d 369, 373 (1994) (choice of remedy for *Batson* violation "the prerogative of the judge"); *Ezell v. State*, 909 P.2d 68, 72 (Okla. Crim. App. 1995) (concluding either remedy announced in *Batson*

appropriate "depending on the particular circumstances at trial"); *Woodson v. Porter Brown Limestone Co., Inc.*, 916 S.W.2d 896, 906–07 (Tenn. 1996) (signaling that reseating juror or striking entire venire alternate appropriate remedies); *Peetz v. State*, 180 S.W.3d 755, 759–61 (Tex. Ct. App. 2005) (trial court may fashion remedy for *Batson* violation according to its discretion); *State v. Valdez*, 140 P.3d 1219, 1233 (Utah 2006) (requiring *Batson* challenge to be raised in such a manner that trial court "is able to fashion a remedy").

6. The appropriateness of a *Batson* remedy has been addressed in only a handful of Arizona cases. In unpublished decisions, this court has upheld the reinstatement of improperly struck jurors to their original positions, *State v. Martinez*, No. 1 CA-CR 06-0936, ¶¶ 9-10, 2008 WL 2447441 (Ariz. App. June 12, 2008) (mem. decision); *State v. Garcia*, No. 1 CA-CR 10-0033, ¶¶ 7-

approaches addresses important constitutional concerns. Reseating unconstitutionally challenged jurors emphasizes the equal protection interests of the individual jurors. That approach, however, may not be available in all circumstances. If struck jurors are no longer available to serve, a mistrial may be the only practical remedy. And although striking an entire venire may ensure an improperly excluded juror will not harbor animus toward the striking party, that solution does not promote judicial economy when alternative remedies are available. Such concerns may be obviated by requiring peremptory challenges to be exercised outside the presence of the jury, but there is currently no such requirement in our procedural rules. *See* Ariz. R. Civ. P. 47(e); Ariz. R. Crim. P. 18.4, 18.5(h) ("persons remaining in the jury box" after peremptory challenges are made). And, as noted above, commencing the jury selection process anew rewards the striking party for improper actions to the extent it ensures the excluded juror or jurors do not sit on that jury. *See Willis*, 118 Cal.Rptr.2d 301, 43 P.3d at 137.

¶ 22 In view of these issues and concerns, we conclude it is unnecessary to impose a single, bright-line remedy for *Batson* violations. The better approach, we think, is to leave it to our trial judges' discretion to tailor an appropriate remedy to the particulars of the constitutional violation. We therefore hold that when a *Batson* objection has been sustained, the trial court may impose either of the remedies identified in that seminal case. That is, it is within the court's discretion to either reseat an improperly challenged venireperson, or to grant a mistrial, depending on the particular circumstances. *See Batson*, 476 U.S. at 99 n.24, 106 S.Ct. 1712.

¶ 23 In so holding, we do not foreclose the possibility of other remedies. Although the *Batson* court identified only two solutions, it did not suggest they were exhaustive. *Id.* As stated in *Danforth v. Minnesota*, 552 U.S. 264, 306, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008), state courts are entitled

to give broad effect to rules of constitutional procedure. If alternative remedies are to be employed, however, we are mindful of the Court's observation that any remedy for a constitutional violation ought to take as its touchstone that the nature of the remedy must be determined by the character and scope of the violation. *Milliken v. Bradley*, 433 U.S. 267, 280, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). Courts should also consider the practicalities of the situation such as the particulars of the case, the egregiousness of the violation, and any other factor they may find appropriate. *See Koo*, 124 F.3d at 873; *see also People v. Luciano*, 10 N.Y.3d 499, 860 N.Y.S.2d 452, 890 N.E.2d 214, 219 (2008) (identifying as relevant factors "whether the challenged juror is available to be reseated, whether the litigant appears to be engaging in a pattern of discrimination, and the number of peremptory challenges that remain to be exercised"). On review, we will defer to any factual finding unless clearly erroneous, *see State v. Gay*, 214 Ariz. 214, ¶ 16, 150 P.3d 787, 793 (App. 2007), and will uphold any remedy imposed absent a clear abuse of the trial court's discretion, *cf. Walker*, 490 F.3d at 1294; *State v. Newell*, 212 Ariz. 389, ¶ 61, 132 P.3d 833, 846 (2006) (denial of mistrial for prosecutorial misconduct not disturbed absent clear abuse of discretion).

¶ 24 In this case, the trial court did not abuse its discretion in reinstating the improperly struck jurors and forfeiting the state's invalid challenges. The record indicates that all strikes, justifications for the strikes, and arguments regarding the appropriateness of the remedy were made outside the presence of the jury; thus there was no risk a rejected juror could be offended or harbor animus against the state or justice system. And, although only two of the three reinstated venirepersons were impaneled on Urrea's jury, the court specifically noted it had not found "any kind of personal misconduct" attributable to the prosecutors.

10, 2011 WL 283325 (Ariz. App. Jan. 27, 2011) (mem. decision), and remanded for a new trial when the trial court committed clear error in denying a defendant's *Batson* challenge, *State v. Brown*, No. 1 CA-CR 13-0608, ¶¶ 19-20, 2014 WL

2565551 (Ariz. App. June 5, 2014) (mem. decision); *cf.* Ariz. R. Sup. Ct. 111(c)(1)(B) (memorandum decisions may be cited to assist appellate court in deciding whether to issue a published opinion).

¶ 25 Urrea, however, suggested he was concerned with the trial court's decision regarding the reinstated jurors and the final composition of the jury. The court, following standard procedure,[7] empaneled the first nine jurors who had not been struck, including two of the three that had been reinstated, and in response to Urrea's complaint, noted the "predictable" "consequences" of a successful *Batson* challenge. Urrea did not indicate or suggest he would have preferred that any of the improperly struck jurors nevertheless be kept off the jury, nor did he offer any justification for excluding additional jurors. But even if he had, as our supreme court has observed, while a defendant in a criminal case is entitled to a fair and impartial jury, he is not entitled to any particular juror. *See State v. Morris*, 215 Ariz. 324, ¶ 40, 160 P.3d 203, 213 (2007). The nature of the remedy here was in accord with the seriousness of the situation, particularly in light of the trial court's unchallenged finding of a lack of any misconduct by the state, and we conclude the court appropriately remedied the *Batson* violation.

### The Dissent

¶ 26 In his dissent, our colleague proposes grounds for reversal that appear to have little support, particularly in Arizona.[8] At the outset, the dissent quotes the reinstatement remedy from *Batson*, "disallow[ing] the discriminatory challenges and resum[ing] selection with the improperly challenged jurors reinstated on the venire," 476 U.S. at 99 n.24,

106 S.Ct. 1712, and then concludes the trial court here "imposed only an incomplete version of the latter remedy" because one of the reinstated jurors did not end up on the jury. But *Batson* did not say improperly struck jurors must be placed on the jury. Rather, they are to be reinstated on the "venire," which is the panel "from among whom the jurors are to be chosen." Black's Law Dictionary (10th ed. 2014).

¶ 27 In support of its assertion that the trial court was "obligated" to seat all improperly struck jurors on the petit jury, the dissent cites a Mississippi case involving the improper denial of a defendant's *Batson* challenge. But that decision did not address the scope of an appropriate *Batson* remedy, focusing only on the trial court's failure to grant any remedy at all. *See Conerly v. State*, 544 So.2d 1370, 1372–73 (Miss. 1989) (remanding for new trial when trial court determined state's explanation for striking juror was invalid but nevertheless allowed state's peremptory challenge). Here, the trial court did not fail to act on the violation; it reinstated the excluded jurors on the venire, and then "resume[d] selection" as directed by *Batson*. 476 U.S. at 99 n.24, 106 S.Ct. 1712. The dissent's assertion that "resum[ing] selection" under *Batson* "required [the court] to redo the Rule 18.5(g) procedure" entails a strained definition of the word "resume," which is in common understanding quite distinct from the word "redo." [9]

---

7. Ariz. R. Crim. P. 18.5(g) directs the courtroom clerk to "strike the jurors on the bottom of the list until only the number to serve, plus alternates, remain" if parties fail to exercise the full number of peremptory challenges. A similar process has been approved in the civil context. *See* Ariz. R. Civ. P. 47 cmt. to 1995 amend. (describing purpose of amendments to allow for the "struck" juror selection method, in which for-cause challenges are made after the jury panel has been examined, peremptory strikes are then made and legal issues therefrom resolved, and "the clerk calls the first eight names remaining on the list").

8. The dissent cites three Arizona cases to suggest reversal is required in this case. However, *State ex rel. Romley*, 181 Ariz. 271, 274, 889 P.2d 629, 632 (App. 1995), discussed the importance of peremptory strikes in saying that a party generally need not explain its "arbitrary and capricious"

reasons for striking a juror. *State v. Boston*, 170 Ariz. 315, 316–17, 823 P.2d 1323, 1324–25 (App. 1991), is also distinguishable as the trial court there erroneously allowed a juror to be struck in violation of *Batson*. Finally, the "absolute" right to peremptory strikes attributed to *State v. Thompson*, 68 Ariz. 386, 390, 206 P.2d 1037, 1039 (1949), is quoted from the 1936 edition of American Jurisprudence. The more recent second edition notably excised this language. *See* 47 Am. Jur. *Jury* § 206.

9. As for the dissent's suggestion the trial court "truncat[ed] the proceeding with an inadequate remedy" because of concerns about time, the Supreme Court has recognized that judges' decisions in jury selection "are fast paced, made on the spot and under pressure" and even a wrong decision does not always require reversal. *United States v. Martinez–Salazar*, 528 U.S. 304, 316, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000).

¶ 28 Moreover, the dissent's contention that reinstating the improperly struck jurors to the venire was inadequate to ensure their own rights appears to contradict another Supreme Court case. Although the Equal Protection Clause proscribes discriminatory peremptory strikes that would violate the rights of otherwise qualified and unbiased citizens to sit on juries, it does not require that they ultimately be seated. *Powers v. Ohio*, 499 U.S. 400, 409, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (individual juror does not have right to sit on petit jury, only right "not to be excluded from one on account of race"). Here, juror C.C. ultimately did not sit on Urrea's jury because of his position near the bottom of the clerk's randomly generated list of potential jurors, not because he was discriminated against.

¶ 29 The dissent's speculation that the trial court "impaired Urrea's right to peremptory challenges under Rule 18.5(g)" because Urrea may have struck different jurors knowing that the state could not strike the three reinstated jurors is likewise unwarranted. First, we disagree that the trial court was "required to vacate" Urrea's fourth, fifth, and sixth peremptory challenges so that he could have another opportunity to re-exercise those strikes. The dissent cites no authority for that proposition, nor is there any evidence to support the presumption that Urrea would have used any of those strikes differently.

¶ 30 Second, that the jury might have been different had the trial court ruled differently did not violate Urrea's constitutional rights. As the Supreme Court has noted, "peremptory challenges ... are a means to achieve the end of an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). In *Ross*, the Court unequivocally stated that peremptory strikes are "not of constitutional dimension." *Id.*; *see also Poland v. Stewart*, 169 F.3d 573, 583 (9th Cir. 1999). The Court found no constitutional violation in *Ross* when the trial court erroneously failed to strike a juror for cause and the defendant used one of his peremptory strikes to remove the juror from the venire. *Id.* at 83, 108 S.Ct. 2273. The Court noted there, as the dissent does here, the trial court's action "may have resulted in a jury panel different from that which would otherwise have decided the case." *Id.* at 87,

108 S.Ct. 2273. But if there is no error when a defendant must use a peremptory strike to cure what would otherwise be a violation of a constitutional right, there can be no error when a defendant exercised all of his peremptory strikes but perhaps would have exercised them differently in other circumstances. As our own supreme court has said, "there is no principled basis for interpreting a court rule governing peremptory challenges more broadly than a federal constitutional right." *State v. Hickman*, 205 Ariz. 192, ¶ 40, 68 P.3d 418, 427 (2003). Here, the trial court remedied the *Batson* violations in one of the ways approved of in *Batson* itself, and there has been no suggestion that the jury impaneled was anything less than impartial.

¶ 31 Nor did the trial court's remedy violate Urrea's statutory right to peremptory strikes. The Supreme Court held in *United States v. Martinez–Salazar*, 528 U.S. 304, 317, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), that "a defendant's exercise of peremptory strikes pursuant to [the federal rule granting peremptory strikes] is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." As noted above, removing jurors for cause is necessary to make the impaneled jury impartial, whereas peremptory strikes are merely a means towards that end.

¶ 32 Lastly, the dissent's suggestion that "failing to remedy a *Batson* violation constitutes structural error" appears to be based on a misapplication of case law and the conflation of a non-remedied "*Batson* violation" with a theoretical failure to strictly comply with the procedural outlines of Rule 18.5(g). The cases applying structural error review to issues of jury selection do so either because a juror was wrongly placed on the jury, *see, e.g., United States v. McFerron*, 163 F.3d 952, 954–56 (6th Cir. 1998), or because a trial court allowed improper strikes of jurors in violation of *Batson*, *see, e.g., Tankleff v. Senkowski*, 135 F.3d 235, 247–48 (2d Cir. 1998). The situation presented here is much different, and the cases cited by the dissent do not compel the outcome suggested therein, particularly in view of *Martinez–Salazar*. *See*

*Hickman*, 205 Ariz. 192, ¶¶ 13–14, 68 P.3d at 421 (noting that, after *Martinez–Salazar*, a number of courts adopted harmless error review for cases in which a defendant used a peremptory strike to remove a juror that should have been removed for cause).

¶ 33 Our supreme court held in *Hickman* that impairment of a defendant's statutory right to peremptory strikes only requires reversal upon a showing of prejudice. 205 Ariz. 192, ¶ 32, 68 P.3d at 425–26. Applying that standard here, and even accepting arguendo the trial court failed to comply with Rule 18.5(g), Urrea cannot show prejudice. The dissent's conclusion that Urrea was prejudiced because one "improperly struck juror ... did not serve on the jury" is undercut by *Ross*, *Martinez–Salazar*, *Hickman*, and the well-established principle that a defendant is not entitled to any particular juror, but only a fair trial. *Morris*, 215 Ariz. 324, ¶ 40, 160 P.3d at 213. Our dissenting colleague generally acknowledges the broad discretion accorded trial courts in fashioning a *Batson* remedy and identifies a number of potential variants, save the reasonable and appropriate remedy adopted by the trial court here. That remedy was in accord with *Batson* and its progeny, and well within the court's discretion.

## Profile Testimony

■■■ ¶ 34 Urrea lastly claims the trial court erroneously admitted improper expert testimony at trial.[10] He alleges that, over his objection, the state's expert "testified to what was essentially 'profile' evidence concerning the manner in which drug[ ] transactions occur and the role of individuals in these transactions, including drug couriers." The state counters that the challenged testimony was not profile evidence, and even if it were, any error was harmless. We review the trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *State v. Salazar–Mercado*, 234 Ariz. 590, ¶ 13, 325 P.3d 996, 1000 (2014).

■■■ ¶ 35 Drug courier profile evidence has been described as "an 'informal compilation of characteristics' ... typically displayed by persons trafficking in illegal drugs." *State v. Lee*, 191 Ariz. 542, ¶ 10, 959 P.2d 799, 801 (1998), *quoting Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980). Our supreme court has condemned the presentation of such evidence as substantive proof of guilt at trial. *See id.* ¶ 12. In contrast, generalized expert testimony about the way drug traffickers typically operate has been upheld. *See State v. Gonzalez*, 229 Ariz. 550, ¶ 13, 278 P.3d 328, 332 (App. 2012). An expert oversteps the permissible bounds when the testimony relates not just to generalized patterns of a criminal organization, but compares the modus operandi of a specific organization to the conduct of a defendant in a particular case. *See State v. Garcia–Quintana*, 234 Ariz. 267, ¶¶ 14–15, 321 P.3d 432, 436 (App. 2014).

¶ 36 Urrea broadly asserts the trial court erred in allowing the state's expert to testify "concerning the manner in which drug[ ] transactions occur and the role of individuals in these transactions." But, as noted above, such generalized testimony has been found to be admissible modus operandi evidence, rather than inadmissible profile evidence. *See Gonzalez*, 229 Ariz. 550, ¶ 13, 278 P.3d at 332. And because Urrea has made only a vague claim, without specifying any particular statement he takes exception to, we are unable to meaningfully address the issue further. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) (requiring citations to portions of the record relied on); *State v. Moody*, 208 Ariz. 424, n.9, 94 P.3d 1119, 1147 n.9 (2004) (undeveloped arguments waived).

■■■ ¶ 37 Arguments made for the first time on appeal are reviewed for fundamental error. *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). Here, Urrea has not argued the error was fundamental, nor have we found error which could be so characterized. *See State v. Torres*, 233 Ariz. 479, ¶ 9, 314 P.3d 825, 827 (App. 2013); *see also Moreno–Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d at 140 (fundamental error waived if not argued). And to the extent Urrea suggests the officer's testimony was

---

**10.** Urrea additionally renews his claim that Detective Felix was untimely disclosed and should have been precluded from testifying. His failure to develop or support this argument, however, waives the issue and we do not address it further. *See State v. Moody*, 208 Ariz. 424, n.9, 94 P.3d 1119, 1147 n.9 (2004) (merely mentioning argument insufficient).

impermissible opinion regarding whether the drugs were for sale or for personal use, we again reject such an argument. *See, e.g., State v. Fornof*, 218 Ariz. 74, ¶¶ 20–21, 179 P.3d 954, 959–60 (App. 2008). Urrea testified at trial that he was on his way from Tucson to Phoenix with the cocaine "to party" with his cousin. The only issue for the jury was whether the 61.8 grams of cocaine in Urrea's possession was for personal use or for sale. As this court has repeatedly held, so long as proper foundation is laid, a qualified law enforcement officer may opine on whether a particular defendant possessed drugs for sale or for personal use. *See State v. Carreon*, 151 Ariz. 615, 616–17, 729 P.2d 969, 970–71 (App. 1986). There was no error in the trial court's admission of the expert testimony in this case.

## Disposition

¶ 38 For all the foregoing reasons, Urrea's conviction and sentence are affirmed.

MILLER, Judge, dissenting:

¶ 39 I agree with my colleagues that a trial court has broad discretion to fashion an appropriate remedy for a *Batson* violation, and we will not disturb its ruling absent an abuse of discretion. I also agree that imposing either of the two remedies the Supreme Court mentioned in *Batson* is not an abuse of discretion. Those two remedies are: (1) "discharg[ing] the venire and select[ing] a new jury from a panel not previously associated with the case," or (2) "disallow[ing] the discriminatory challenges and resum[ing] selection with the improperly challenged jurors reinstated on the venire." *Batson*, 476 U.S. at 99 n.24, 106 S.Ct. 1712. But the trial court imposed only an incomplete version of the latter remedy, and it impaired Urrea's right to peremptory challenges under Rule 18.5(g), Ariz. R. Crim. P. A defendant who perceives

a *Batson* violation should not be given a Hobson's choice whether to assert his right to a constitutionally valid jury or to relinquish his Rule 18.5 right to exercise his peremptory challenges. For the reasons that follow, I conclude the court abused its discretion when it sustained Urrea's *Batson* challenges to three jurors, but did not allow him to exercise peremptory challenges with the remaining members of the jury panel.

¶ 40 Each party is allowed six peremptory challenges in a noncapital case tried in superior court, such as the present case. *See* Ariz. R. Crim. P. 18.4(c)(1)(ii). The procedure for the use of peremptory challenges is set forth in Rule 18.5(g). After examining the jurors, the prosecutor and the defendant take turns exercising their peremptory challenges on the clerk's list, beginning with the prosecutor. *Id.* Either party may waive its remaining challenges on one of its turns, but the other party is nevertheless entitled to use all of its remaining challenges if desired. *Id.* "If the parties fail to exercise the full number of challenges allowed them, the clerk shall strike the jurors on the bottom of the list until only the number to serve, plus alternates, remain" (here, nine total).[11] *Id.*

¶ 41 Here, the trial court found the state's fourth, fifth, and sixth peremptory challenges violated *Batson*.[12] The court quashed those challenges and reinstated the three improperly struck jurors on the clerk's list. The court then ordered that the first nine remaining names on the revised list would serve as the jurors and the alternate. The venirepersons the state had improperly stricken with its fourth and fifth peremptory challenges— E.L. and F.G., respectively—ultimately served on the jury. The clerk struck from the bottom of the list C.C., the venireperson the state had improperly stricken with its sixth peremptory challenge.

**11.** A non-capital criminal case in which the sentence authorized by law is less than thirty years requires a jury of eight, and typically, as here, the court will qualify one alternate juror as well for a total of nine. *See* A.R.S. § 21–102(A)–(B); Ariz. R. Crim. P. 18.1(a), 18.2, 18.4(c)(1)(ii), 18.5(b), (h).

**12.** A *Batson* violation necessarily includes a finding of discriminatory intent. *Hernandez v. New York*, 500 U.S. 352, 359–60, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("Unless a discriminatory

intent is inherent in the prosecutor's explanation, the reason [for a peremptory strike] will be deemed race neutral."). Therefore, I cannot agree with the majority's conclusion that there was a "lack of any misconduct by the state" and the situation was not "serious[ ]" enough to warrant a robust remedy. The arguably inconsistent statement by the trial court regarding the prosecutor does not obviate the trial court's finding of a *Batson* violation, which requires discriminatory intent.

¶ 42 The trial court did not abuse its discretion by quashing the state's three improper strikes and reinstating the wrongfully struck prospective jurors on the clerk's list. *See Batson*, 476 U.S. at 99 n.24, 106 S.Ct. 1712. However, the court abused its discretion when it stopped there. The court was "obligated" to seat the improperly struck jurors on the jury, not merely reinstate them on the clerk's list. *Conerly v. State*, 544 So.2d 1370, 1371–72 (Miss. 1989); *accord Ellerbee v. State*, 215 Ga.App. 312, 450 S.E.2d 443, 447–48 (1994) (reasoning such jurors have right not to be excluded from jury on basis of race), *overruled on other grounds by Felix v. State*, 271 Ga. 534,523 S.E.2d 1 (1999).[13] Furthermore, after reseating the improperly struck jurors the court was required to redo the Rule 18.5(g) procedure, at least as to Urrea's fourth, fifth, and sixth strikes, which had occurred after the *Batson* taint had begun. *See Batson*, 476 U.S. at 99 n.24, 106 S.Ct. 1712 (court within its discretion if it "*resume[s] selection* with the improperly challenged jurors reinstated on the venire") (emphasis added). At a minimum, the court was required to vacate those strikes without prejudice and give Urrea another opportunity to exercise them from among the remaining venirepersons. Alternatively, in its discretion, the court could have vacated all prior valid peremptory challenges without prejudice and conducted the entire Rule 18.5(g) procedure anew. The court could have returned the three improperly-used peremptory strikes to the prosecutor, *see United States v. Ramirez–Martinez*, 273 F.3d 903, 910 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc), or it could

have found those strikes forfeited as a consequence of the *Batson* violation, *see Luciano*, 860 N.Y.S.2d 452, 890 N.E.2d at 218; *Peetz v. State*, 180 S.W.3d 755, 760–61 (Tex. App. 2005). If the latter, the court also could have granted Urrea additional peremptory challenges in its discretion. *Cf. Chin*, 771 N.Y.S.2d at 159; *Hill*, 727 A.2d 578, ¶ 15.

¶ 43 Instead of employing any of these permissible alternatives,[14] the trial court merely left in place the state's three valid peremptory challenges and Urrea's six peremptory challenges, which were all made before the *Batson* issue had ever been raised. The practical effect of the ruling was to deny Urrea the full benefit and use of his peremptory challenges. This was an error of law and an abuse of discretion. *See State v. Wall*, 212 Ariz. 1, ¶ 12, 126 P.3d 148, 150 (2006) (error of law committed in reaching discretionary conclusion may constitute abuse of discretion).

¶ 44 In announcing its ruling, the trial court stated, "we're running out of time" and "[w]e can't just sit here and talk about it for two days." Although the court's frustration with the lack of Arizona case law guidance was understandable, simply truncating the proceeding with an inadequate remedy was not sufficient, particularly where it was simple and efficient to permit another round of peremptory challenges. The original challenges took the attorneys no more than eighty-one minutes including their lunch break. A second round would have taken half that time and would not have inconvenienced the jury panel, which was on break. *See also Andrews*, 78 A.3d at 984 ("The remedy or remedies selected to redress a *Batson* ... violation must never be informed solely by the desire to expedite a trial.").

13. However, reinstatement may not always be possible. *See, e.g., Chin*, 771 N.Y.S.2d at 159 (reinstatement not feasible because improperly struck juror already released from service); *State v. Walker*, 154 Wis.2d 158, 453 N.W.2d 127, 135 n.12 (1990) (in jury box system, where prospective jurors are seated, examined, and publicly challenged or accepted one at a time, reinstatement could cause juror bias against attorney who made improper strike), *abrogated on other grounds by State v. Felix*, 339 Wis.2d 670, 811 N.W.2d 775 (2012).

14. The majority indicates that the nature of remedy must be matched against the severity of the

violation, citing *Milliken*, 433 U.S. at 279–80, 97 S.Ct. 2749, and *Willis*, 118 Cal.Rptr.2d 301, 43 P.3d at 134–35. These cases are not on point. *Milliken* involved the propriety of the equitable remedy of remedial education in the context of a school desegregation case involving the Detroit school system. 433 U.S. at 269, 279, 97 S.Ct. 2749. *Willis* concerned the offensive use of multiple, continuous *Batson* violations to force a mistrial under California's then-absolute rule requiring a mistrial. 118 Cal.Rptr.2d 301, 43 P.3d at 133–37. Neither case supports the proposition that *Batson* violations are weighed for severity before deciding the appropriate remedy.

¶ 45 The question becomes whether this court should employ structural error review or trial error review to a court's failure to remedy a *Batson* violation adequately. *See generally Henderson*, 210 Ariz. 561, ¶ 12, 115 P.3d at 605–06 (distinguishing structural error and trial error). "[T]he exercise of peremptory strikes 'is considered one of the accused's most important rights,'" and it is substantial, not merely procedural or technical.[15] *State ex rel. Romley v. Superior Court*, 181 Ariz. 271, 274, 889 P.2d 629, 632 (App. 1995), *quoting* Brian J. Serr & Mark Maney, *Racism, Peremptory Challenges, and the Democratic Jury: The Jurisprudence of a Delicate Balance*, 79 J. Crim. L. & Criminology 1, 11 (1988). Our supreme court has even described the right as "absolute." *State v. Thompson*, 68 Ariz. 386, 389–90, 206 P.2d 1037, 1039–40 (1949).[16] That court has also cautioned against overreliance on trial error review in the Rule 18.5 context and has specifically expressed its concern that application of trial error review could "justify ... impaneling a jury from which minorities were excluded." *State v. Anderson*, 197 Ariz. 314, ¶ 22, 4 P.3d 369, 378–79 (2000). Notably, in *Anderson* the court cited *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), in which the United States Supreme Court held that "unlawful exclusion of members of the defendant's race from a grand jury" is structural error. *Anderson*, 197 Ariz. 314, ¶ 22, 4 P.3d at 378–79; *see also Batson*, 476 U.S. at 84 n.3, 106 S.Ct. 1712 (noting basic principles prohibiting racial discrimination essentially identical as to grand juries and petit juries). To apply harmless error review to an unremedied *Batson* violation would effectively perpetuate the wrongs addressed in *Anderson*. For these reasons, I would hold that failure to remedy a *Batson* violation in accordance with Rule 18.5(g) constitutes structural error requiring reversal. *See, e.g., Tankleff*, 135 F.3d at 248; *McFerron*, 163 F.3d at 955–56 (collecting cases "resoundingly reject[ing]" harmless error review of *Batson* errors); *Ruiz v. Comm'r of Corr.*, 156 Conn.App. 321, 113 A.3d 485, 493 n.6 (2015).

¶ 46 The majority's reliance on *Martinez–Salazar*, *Ross*, and *Hickman* for the proposition that harmless error review applies is misplaced. In each of those cases, the defendant used a peremptory challenge to strike a juror whom the court should have dismissed for cause. *Martinez–Salazar*, 528 U.S. at 308–09, 120 S.Ct. 774; *Ross*, 487 U.S. at 83, 108 S.Ct. 2273; *Hickman*, 205 Ariz. 192, ¶ 3, 68 P.3d at 419. In such a situation, only the defendant's rights are at stake, and as long as the jury ultimately impaneled is fair and impartial, the defendant is not prejudiced. *See Hickman*, 205 Ariz. 192, ¶ 28, 68 P.3d at 424. But unlike those cases, *Batson* is about more than just ensuring a fair trial for a defendant. *See Powers*, 499 U.S. at 406–07, 111 S.Ct. 1364 (*Batson* serves multiple ends, only one of which is to protect defendant from discrimination). It is also about safeguarding participatory democracy and the equal protection rights of venirepersons.[17] *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 142 n.13, 114 S.Ct. 1419, 128 L.Ed.2d 89

---

**15.** The practice of peremptory challenges is not without its critics. *See, e.g., State v. Medina*, 172 Ariz. 287, 290, 836 P.2d 997, 1000 (App. 1992) (many based on "ugly generalizations"); Vivien Toomey Montz & Craig Lee Montz, *The Peremptory Challenge: Should It Still Exist? An Examination of Federal and Florida Law*, 54 U. Miami L. Rev. 451, 481–86 (2000) (empirical evidence suggests attorneys "generally unsuccessful in reliably predicting jurors' tendencies"); Morris B. Hoffman, *Peremptory Challenges Should Be Abolished: A Trial Judge's Perspective*, 64 U. Chi. L. Rev. 809, 871 (1997) (dubious theories underlying exercise of peremptory challenges are "[a]t worst ... our old friends racism, sexism, and class hatred all dressed up in twentieth century psychobabble" even after *Batson*, and "[a]t best, they are animus-free nonsense, but nonsense nonetheless"). But unless and until our supreme court prohibits peremptory challenges, we are required to treat them as a substantial right that cannot be abrogated without justification.

**16.** The majority suggests *Thompson* is no longer authoritative because it cited a treatise since changed, but does not contend it has been abrogated or overruled. *See also Hickman*, 205 Ariz. 192, ¶ 26, 68 P.3d at 424 (distinguishing *Thompson* rather than undermining it). "We are constrained by decisions of the Arizona Supreme Court and may not overrule, modify, or disregard them." *Craven v. Huppenthal*, 236 Ariz. 217, ¶ 13, 338 P.3d 324, 327 (App. 2014).

**17.** Although the majority is correct that peremptory challenges are not of a constitutional dimension, *Batson*, of course, is. *Batson*, 476 U.S. at 89, 106 S.Ct. 1712, *citing* U.S. Const. amend. XIV, § 1.

(1994) ("the right to nondiscriminatory jury selection procedures belongs to the potential jurors, as well as to the litigants"). Uncured *Batson* violations undermine the integrity of the judicial system by telling citizens they can be denied the right to sit on juries because of the color of their skin, their ethnicity, or their gender. *See id.* at 140–42 & n.13, 114 S.Ct. 1419 (discriminatory jury selection procedures erode public confidence in trial fairness and send message to all in courtroom and beyond "that certain individuals, for no reason other than gender [or race], are presumed unqualified by state actors to decide important questions upon which reasonable persons could disagree"). If our citizens do not believe that courts and attorneys can fairly seat them as jurors, it will negatively affect the truth-finding process of jurors actually seated. *See id.* (discriminatory use of peremptory challenges harms litigants "by the risk that the prejudice that motivated the discriminatory selection of the jury will infect the entire proceedings"); *see also Anderson*, 197 Ariz. 314, ¶ 22, 4 P.3d at 378–79, *quoting Fulminante*, 499 U.S. at 309–10, 111 S.Ct. 1246 ("[E]rrors that create 'defects ... in the trial mechanism' itself affect the 'entire conduct of the trial from beginning to end,' damage 'the framework within which the trial proceeds,' and are therefore not subject to harmless error analysis."). The majority recognizes the equal protection rights of jurors wrongfully excluded based on race, yet ultimately does not afford them a means to remedy those rights.[18]

¶ 47 Even assuming for the sake of argument that a *Batson* violation constitutes technical error, which would not require reversal in the absence of prejudice to the defendant, the error was not harmless here. The practical result of the trial court's incomplete remedy was that improperly struck juror C.C. did not serve on the jury. By merely striking the bottom three names from a list that included the reinstated jurors, rather than ordering that the improperly struck jurors serve on the jury and then reinitiating the Rule 18.5(g) procedure, the court effectively ratified one of the prosecutor's unconstitutional strikes.

¶ 48 Accordingly, I would reverse and remand for a new trial.[19] *Cf. State v. Boston*, 170 Ariz. 315, 317–18, 823 P.2d 1323, 1325–26 (App. 1991) (reversing conviction and remanding for new trial where jury had been selected in violation of *Batson*). I respectfully dissent.

---

18. The majority is correct that Urrea had no right to a particular jury, *Morris*, 215 Ariz. 324, ¶ 40, 160 P.3d at 213, but that observation does not address or obviate the rights of citizens "not to be excluded from [a particular petit jury] on account of race," *Powers*, 499 U.S. at 409, 111 S.Ct. 1364, as happened here.

19. Because the suppression and profile testimony issues would be likely to recur on remand, I would address those issues and reach the same conclusions as my colleagues. *See State v. May*, 210 Ariz. 452, ¶ 1, 112 P.3d 39, 40 (App. 2005).