IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee,*

*v.*

FRANCISCO MIGUEL URREA,
*Appellant.*

No. CR-17-0261-PR
Filed July 11, 2018

Appeal from the Superior Court in Pinal County
The Honorable Dwight P. Callahan, Judge Pro Tempore
No. CR201402545
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
242 Ariz. 518 (App. 2017)
**AFFIRMED IN PART; VACATED IN PART**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor General, Joseph T. Maziarz, Chief Counsel, Phoenix, Amy Pignatella Cain (argued), Assistant Attorney General, Criminal Appeals Section, Tucson, Attorneys for State of Arizona

Rafael F. Gallego (argued), Gallego Law Firm, P.C., Tucson, Attorney for Francisco Miguel Urrea

Amy Kalman, Brian Thredgold, Arizona Attorneys for Criminal Justice, Phoenix; Jared G. Keenan (argued), Kathleen E. Brody, American Civil Liberties Union Foundation of Arizona, Phoenix, Attorneys for Amici Curiae

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE BRUTINEL, and JUSTICES PELANDER, TIMMER, GOULD, and LOPEZ joined.

------

JUSTICE BOLICK, opinion of the Court:

¶1        During a trial on narcotics charges, the prosecutor violated Defendant's equal protection rights by using peremptory strikes to remove Hispanic jurors from the venire in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). We hold that the trial court's remedy reinstating the wrongfully excluded jurors to the venire was proper.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2        Defendant Francisco Miguel Urrea was charged with and found guilty of transportation of a narcotic drug for sale. During jury selection, Urrea raised a *Batson* challenge, contending that five of the prosecutor's six peremptory strikes targeted potential jurors with "Hispanic ethnic background[s]."

¶3        The trial court conducted a *Batson* analysis and concluded that the prosecutor could not establish a race-neutral justification for striking three of the challenged jurors. Although it found a *Batson* violation, the court found no misconduct on the prosecutor's part. The court ruled that the prosecutor forfeited those three strikes and restored the three jurors to the venire. Urrea moved for a mistrial and dismissal of the entire venire. The court denied the motion and empaneled the first nine jurors who had not been struck, including two of the reinstated jurors.

¶4        A divided panel of the court of appeals affirmed. *State v. Urrea*, 242 Ariz. 518 (App. 2017). The court held that reinstatement of the wrongfully excluded jurors to the venire was permissible under *Batson* and proper under the circumstances. *Id.* at 525–26 ¶¶ 21–25. The dissenting judge stated that restoring improperly challenged jurors to the venire was permissible but an "incomplete" remedy, *id.* at 529 ¶ 39 (Miller, J., dissenting), and expressed that the court should have restored defense counsel's peremptory challenges or started the jury selection process anew, *id.* at 530 ¶ 42.

¶5 We granted review because the appropriate remedies for a *Batson* violation present an issue of statewide concern and first impression in Arizona. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

¶6 We review a trial court's *Batson* remedy for abuse of discretion. *See United States v. Walker*, 490 F.3d 1282, 1294 (11th Cir. 2007) (citing *Batson*, 476 U.S. at 99 n.24). We review questions of law de novo. *State v. Miles*, 243 Ariz. 511, 513 ¶ 7 (2018).

¶7 In Arizona, each side in a noncapital criminal case is allowed six peremptory jury strikes. Ariz. R. Crim. P. 18.4(c)(1)(B). After peremptory challenges are exercised, the court empanels the requisite number of jurors and alternates and then excuses any jurors remaining. Ariz. R. Crim. P. 18.5(g).

¶8 In *Batson*, the Supreme Court held that the "Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race." 476 U.S. at 86. This guarantee constrains "the State's privilege to strike individual jurors through peremptory challenges." *Id.* at 89. Unlike challenges for cause, which are necessary to ensure a defendant's trial by an impartial jury, peremptory challenges are "not of constitutional dimension," *United States v. Martinez-Salazar,* 528 U.S. 304, 311 (2000) (quoting *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988)), and thus must yield to the defendant's right to a jury chosen without racial or ethnic bias. Failure to safeguard that right "casts doubt on the integrity of the judicial process and places the fairness of a criminal proceeding in doubt." *Powers v. Ohio,* 499 U.S. 400, 411 (1991) (citation and internal quotation marks omitted). The Court also recognized that the right not to be excluded on the basis of race extends to the jurors themselves: "An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race." *Id.* at 409.

¶9 *Batson* set forth a three-step process to determine a violation. First, the defendant must show purposeful discrimination, which may be demonstrated by circumstantial evidence of disproportionate impact, *Batson*, 476 U.S. at 93, including a pattern of strikes of jurors from the

defendant's racial or ethnic group, *id.* at 96–97. "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation" for the strikes. *Id.* at 97. If such explanation is offered, the trial court will then "have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98; *accord State v. Garcia*, 224 Ariz. 1, 10 ¶ 21 (2010).

¶10 The State concedes the *Batson* violations. Thus, the narrow issue here is whether the trial court's remedy of restoring the impermissibly excluded jurors to their prior places on the venire and forfeiting the State's peremptory challenges was sufficient, as the State asserts, or whether the trial court should have declared a mistrial and begun jury selection anew with a different venire, as Urrea urges.

¶11 The Supreme Court in *Batson* and subsequent cases has not provided extensive guidance on appropriate remedies, but its brief consideration of the matter in *Batson* itself is highly informative, and the Court has not revisited it in the ensuing thirty-two years. The Court stated that, "[i]n light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today." *Batson*, 476 U.S. at 99 n.24. Specifically, the Court "express[ed] no view on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with a case or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire." *Id.* (citation omitted). We refer to the first approach, which Urrea seeks here, as "the mistrial option," and the second, which the trial court ordered and the court of appeals approved, as "the restoration option."

¶12 From *Batson*'s language we derive three inferences. First, in declining to express which option was "more appropriate," the Court implied that either was "appropriate." *Id.* Second, the appropriate remedy may depend on the circumstances of a "particular case." *Id.* Finally, the restoration option contemplates that the wrongfully excluded jurors will be "reinstated on the venire." *Id.*

¶13 Elsewhere in the decision, the Court analogized the *Batson* inquiry to a discrimination claim under Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e to 2000e-17, under which a very similar three-part test is used to determine intentional discrimination. *Id.* at 98 n.21; *see, e.g.,* *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). In that context, a proper remedy makes the victim of discrimination whole by restoring the injured party to the situation that would have existed absent discrimination. *See, e.g.,* *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418–19 (1975). Restoring the wrongfully excluded jurors to the positions they previously occupied in the venire constitutes classic make-whole relief because it recreates the status quo ante.

¶14          As the court of appeals recounted, *Urrea*, 242 Ariz. at 523–24 ¶¶ 17–20, courts have taken varying approaches to *Batson* remedies, with some preferring the mistrial option, others favoring restoration, and a majority allowing the trial court to choose either remedy, *see, e.g., State v. Parker*, 836 S.W.2d 930, 936 (Mo. 1992) (preferring restoration to maximize "judicial time and resources"); *State v. Jones*, 358 S.E.2d 701, 704 (S.C. 1987), *abrogated on other grounds by State v. Chapman*, 454 S.E.2d 317, 320 (S.C. 1995) (remanding for a *Batson* hearing with direction to grant a new trial if *Batson* violation is found); *Coleman v. Hogan*, 486 S.E.2d 548, 549 (Va. 1997) (agreeing "with majority of states that the choice of remedy should be within the discretion of the trial court").

¶15          The dividing line in many cases is whether the improper strikes were made in the challenged jurors' presence, which might affect their impartiality. *See, e.g., State v. McCollum*, 433 S.E.2d 144, 159 (N.C. 1993) (approving mistrial where jurors were exposed to the impermissible strikes to ensure jurors "remain unaffected by that recent discrimination, and to render an impartial verdict without prejudice toward either the State or the defendant"). Where, as here, the strikes, *Batson* challenges, and trial court ruling occurred outside the jurors' presence, restoring the wrongfully excluded jurors to the venire is the preferable remedy. *See, e.g., Parker*, 836 S.W.2d at 940 (noting restoration "better protects the equal protection rights of defendants and venirepersons and facilitates the efficient administration of justice"). By contrast, as we have often recognized, "mistrial is an extraordinary remedy." *State v. Payne*, 233 Ariz. 484, 504 ¶ 61 (2013). The California Supreme Court observed in *People v. Willis* that a mistrial and dismissal of the venire in the *Batson* context may "accomplish nothing more than to reward improper voir dire challenges," as the prosecutor is able to accomplish the purpose of wrongfully eliminating jurors. 43 P.3d 130, 137 (Cal. 2002). Restoring the improperly excluded jurors is also the only

remedy that vindicates the rights of jurors to serve free from discrimination, and it advances the right of crime victims to a speedy trial. *See* Ariz. Const. art. II, § 2.1(10).

**¶16** Like the court of appeals, we do not adopt a bright-line rule that trial courts must follow in fashioning *Batson* remedies. As the Supreme Court has recognized, the trial court plays a "pivotal role" in the *Batson* process, *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008), and it is in the best position not only to evaluate the claims but also to assess the most appropriate remedy under the circumstances. For that reason, a deferential abuse-of-discretion standard is appropriate in reviewing such remedies. *See Walker*, 490 F.3d at 1294.

**¶17** Nor do we construe *Batson* to forbid different or additional remedies. Given that a *Batson* violation is, by definition, the conscious exclusion of a potential juror based on impermissible criteria, *Garcia*, 224 Ariz. at 10 ¶ 21, additional trial remedies such as forfeiting the misused peremptory challenges are also permissible, subject to abuse-of-discretion review.

**¶18** Beyond restoring the wrongfully excluded jurors to the venire in this case, for instance, the trial court also forfeited the three challenges that the State attempted to use in a discriminatory fashion. Both the dissenting judge on the court of appeals and amici argue for additional remedies here, but Urrea waived such arguments by exclusively seeking a mistrial. (Nor did he preserve the state constitutional arguments advanced by amici.)

**¶19** We disavow any suggestion in *State v. Harris* that "the challenged jurors must be allowed to sit" on the petit (trial) jury. 157 Ariz. 35, 36 (1988). That decision dealt only with the proper timing of *Batson* challenges, not remedies. "A defendant is not entitled to be tried by any particular jury but only by one which is fair and impartial." *State v. Hilliard*, 89 Ariz. 129, 133 (1961); *accord State v. Morris*, 215 Ariz. 324, 334 ¶ 40 (2007). The trial court vindicated that right by restoring the improperly challenged jurors to the positions they would have occupied absent discrimination.

**¶20** We reiterate that *Batson* made clear that the two remedies it described, mistrial or restoration, were constitutionally adequate. The touchstone of a minimally adequate remedy is to place the defendant in the

position he or she would have occupied absent discrimination. We are satisfied that the remedy here was not an abuse of the trial court's considerable discretion.

## CONCLUSION

**¶21** We affirm Urrea's conviction and sentence. We vacate paragraphs 13–33 of the court of appeals' opinion.